# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| **DAVID ALLEN TEBBETTS and CYNTHIA INGRAM TEBBETTS,** | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| **BLUE CROSS BLUE SHIELD OF ALABAMA; CARECORE NATIONAL, LLC; and DOE DEFENDANTS 1-10,** | ) **CIVIL ACTION NO. 2:07-CV-** ) **00925-MEF** ) ) ) ) |
| Defendants. | ) |

## DEFENDANT BLUE CROSS AND BLUE SHIELD OF ALABAMA'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Defendant Blue Cross and Blue Shield of Alabama ("Blue Cross") files this Brief in Opposition to Plaintiffs David Allen Tebbetts' and Cynthia Ingram Tebbetts' Motion to Remand (the "Motion").

## INTRODUCTION

On September 10, 2007, Plaintiffs filed their Complaint against Blue Cross in the Circuit Court for Montgomery County, Alabama. The Complaint was served upon Blue Cross on September 18, 2007. With the consent of co-defendant CareCore National LLC ("CareCore"), on October 15, 2007, Blue Cross timely filed its Notice of Removal to this Court with supporting evidence. On October

937916.1

15, 2007, Blue Cross and CareCore (collectively "Defendants") filed their Motions to Dismiss or in the Alternative, Motion for Summary Judgment. On October 24, 2007, Plaintiffs filed their Motion to Remand and thereafter filed motions for stay and for jurisdictional discovery. On November 1, 2007, this Court entered an order denying all pending motions other than the Motion to Remand, so that the court, as a threshold matter, could address the two bases for remand raised by Plaintiffs. Blue Cross now responds.

Plaintiff Cynthia Tebbetts' employer, Montgomery Imaging Center, established an ERISA plan by creating Division I-77[1] of the Medical Assistants' Plan ("MAP"), which is sponsored by the Medical Association of the State of Alabama ("MASA"). Montgomery Imaging Center selected this coverage as the sole coverage for its employees, established various eligibility requirements for employees to participate, and paid the entire individual employee premium. Plaintiffs dispute none of these facts. Instead, Plaintiffs argue only that (1) MASA is not the employer, therefore, this cannot be an ERISA[2] plan, and (2) the failure to attach Returns on Service to the Notice of Removal requires remand. Plaintiffs' arguments are without merit.

---

[1] This division is one of several divisions under the MAP in which various employers provide health benefits to their employees. See Declaration of Carl Caudle, ¶2.

[2] The Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq.

937916.1                                   2

# ARGUMENT

I. **MONTGOMERY IMAGING CENTER ESTABLISHED AND MAINTAINED AN ERISA-GOVERNED PLAN FOR THE PURPOSE OF PROVIDING MEDICAL BENEFITS TO ITS EMPLOYEES, INCLUDING MRS. TEBBETTS.**

Mrs. Tebbetts' employer, Montgomery Imaging Center, established and maintained an employee welfare benefit plan by creating Division I-77 under the MAP, determining various eligibility requirements, and by paying the premium. Plaintiffs attempt to direct the Court's attention away from these dispositive facts by arguing that the MAP itself is not an ERISA plan since MASA is not Mrs. Tebbetts' employer. See Pl. Memo. Brief in Supp. of Mtn. to Remand at 5. Plaintiffs' argument is misguided.[3]  Whether the MAP is an ERISA plan is not

---

[3] Plaintiffs' reliance on Slamen v. Paul Revere Life Ins. Co., 166 F.3d 1102 (11th Cir. 1999) and McCaslin v. Blue Cross and Blue Shield of Alabama, 779 F. Supp. 1312 (N.D. Ala. 1991), also is misplaced. Plaintiffs cite these cases for the proposition that the employer must establish and maintain a policy, and the policy must cover participants because of their employment status. Neither case stands for such a broad proposition. Both cases are distinguishable on their facts. In Slamen, a dentist, who was the sole owner of his dental practice, purchased a disability policy that covered only himself. Slamen sued for breach of contract, and the insurer removed the case to federal court. On appeal of the denial of Slamen's motion to remand, the Eleventh Circuit held that the disability plan was not an ERISA plan, in part, because no employees were covered under the plan. Id. at 1104. Since there were never any non-owner employees eligible under for benefits under the plan, it did not qualify as an ERISA plan.

McCaslin likewise is distinguishable. There, a physician purchased individual health coverage through a plan issued by Blue Cross to the Medical Association of the State of Alabama. He did not cover any of his employees. Id. at 1316. Since no employees were covered under the policy, the court was left only to look to whether MASA was an employer or an employee organization for the purpose of

relevant to the issue on which this Court must focus. Rather, the dispositive jurisdictional issue is whether Plaintiffs' employer, Montgomery Imaging Center, established or maintained an ERISA plan under the test established in Donovan v. Dillingham, 688 F.2d 1367, 1391 (11th Cir. 1982).

### A. Plaintiffs' unduly narrow focus on the MAP ignores controlling authority that the existence of such a policy is but one factor of several to consider in determining whether an ERISA plan exists.

Plaintiffs' Memorandum Brief in Support of Motion to Remand focuses on the fact that the MAP was established by MASA, not by Mrs. Tebbetts' employer and suggests that the Court should limit its review to the MAP. The proper analysis entails more than just scrutinizing the insurance policy that funds the ERISA plan. In order for ERISA to govern, there must be an employee welfare benefit plan. An employee welfare benefit plan is defined under 29 U.S.C. § 1002(1) (1974) as:

---

establishing an ERISA-governed plan. See 29 U.S.C. §1002(1) (requiring that an "employer" or "employee organization" establish plan in order for ERISA to govern). Since MASA was neither McCaslin's employer nor an employee organization, the court had no choice but to find that no ERISA plan existed.

    If Mrs. Tebbetts had purchased individual coverage under the MAP directly without her employer's involvement, then McCaslin and Slamen would dictate a similar outcome. Since Montgomery Imaging Center covered its employees, including Mrs. Tebbetts, under the group benefit plan, this Court need not look to MASA to determine whether it is Mrs. Tebbetts' employer, or an employee organization for purposes of meeting the ERISA's definition of "plan" in 29 U.S.C. §1002(1). Rather, it need only look to whether Montgomery Imaging Center is the employer. Indisputably, it is.

> Any plan, fund or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or maintained for the purpose of providing for its participants or their beneficiaries through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits. . .

In Donovan, the Eleventh Circuit interpreted that provision to require the following five elements be present:

> (1). . . a "plan, fund, or program"
>
> (2) established or maintained
>
> (3) by an employer or by an employee organization, or by both,
>
> (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits. . .
>
> (5) to participants or their beneficiaries.

Donovan, 688 F.2d at 1371 (quoting 29 U.S.C. § 1002(1)).

Regarding the first element, the Donovan court clarified that "[a]t a minimum. . . 'a plan, fund, or program' under ERISA implies the existence of intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits." Id. at 1372. The court then described how the simple purchase of an insurance policy, such as the MAP at issue, differs from the establishment of an ERISA plan. The court stated that "[t]he purchase of insurance

937916.1                              5

is only a method of implementing a plan, fund, or program and is evidence of the existence of a plan but is not itself a plan." Id. at 1375.[4]

Plaintiffs' overly narrow focus on the MAP ignores the fact that the purchase of insurance is nothing more than some evidence that an ERISA plan exists, and does not represent the ERISA plan itself. Plaintiffs assert that whether an ERISA plan exists must be determined by the terms of the MAP. Plaintiffs argue that because the MAP Summary Plan Description states that MASA is the Plan Sponsor and Montgomery Imaging Center is not mentioned, Montgomery Imaging Center cannot have established and maintained an ERISA plan. See Pl. Memo. Brief in Supp. of Mtn. to Remand at 7. Plaintiffs' argument is not persuasive because it ignores the Donovan test and the evidence of record detailing just how Montgomery Imaging Center established its plan and continues to maintain it. This Court must analyze the Donovan requirements as a whole in light of all the evidence to determine whether an ERISA plan exists, including intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for benefits. Id.

---

[4] Plaintiffs cite a portion of Donovan as support for their argument that no ERISA plan can exist in this case unless Montgomery Imaging Center established the MAP. They ignore the rest of Donovan, quoted above, which makes clear that while the purchase of insurance is a method of implementing the plan, the policy is not the plan itself.

An application of the Donovan factors leaves no room for doubt that Montgomery Imaging Center established an ERISA-governed plan. First, the "intended benefits" include the medical coverage provided under Division I-77 of the MAP. See MAP Summary Plan Description ("SPD").[5] Second, the intended beneficiaries are Montgomery Imaging Center's eligible employees. Decl. of Patricia Foshee, ¶¶ 2, 3.[6] See also the Group Application.[7] Third, the source of funding is the group insurance policy (the MAP) to which Montgomery Imaging Center subscribed, thus providing group health insurance to its employees. Id. Fourth, the "procedure for collecting and applying" for benefits is set forth in the MAP SPD. Thus, an ERISA "plan, fund or program" exists, and the first prong of the Donovan test is satisfied.[8]

---

[5] The MAP SPD is attached as Exhibit A to the Carl Caudle Declaration, filed of record.

[6] This Declaration was filed as Exhibit B to the Notice of Removal.

[7] Montgomery Imaging Center's Group Application is Exhibit B to the Carl Caudle Declaration.

[8] On page 8 of their Memorandum Brief in Support of Motion to Remand, Plaintiffs refer to their discussion in section A.2 of the factors enumerated in Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207 (11th Cir. 1999), as revealing that ERISA preemption does not apply. Plaintiffs do not discuss the Butero factors in section A.2 or any other portion of their brief. This apparently is a mistaken reference to Donovan, which is discussed in §A.2. The Butero factors comprise the Eleventh Circuit's test for complete preemption, not the test for whether an ERISA plan has been established and maintained.

**B.    Montgomery Imaging Center, as Mrs. Tebbetts' employer, established and maintained an ERISA plan for the benefit of its employees, including Mrs. Tebbetts.**

The terms of the MAP SPD, when viewed in conjunction with Montgomery Imaging Center's creation of Division I-77 under the MAP, show that Montgomery Imaging Center established and maintained an ERISA-governed plan. Plaintiffs argue that MASA, and not Montgomery Imaging Center, established the MAP because SPD designates MASA as the Plan Sponsor and that Montgomery Imaging Center is not mentioned in that document. Pl. Memo. Brief in Supp. of Mtn. to Remand at 7. Plaintiffs ignore the fact that Montgomery Imaging Center created Division I-77 and in so doing signed the Group Application, and also ignore the language of the MAP SPD itself.

> The MAP SPD defines "Contract" on page 46 as:
>
> [t]he Group Health Benefits contract between your Employer and Blue Cross and Blue Shield of Alabama. The contract is made up of (1) your employer's Group Application for the contract; (2) this Summary Plan Description; and (3) any written change to this Summary Plan Description.

Id. "Group Application" is defined as "[t]he document in which the employer applies to [Blue Cross] for a group benefits plan." Id. The SPD defines "Group" as "[t]he employer, <u>association</u>, or other entity which contracts with Blue Cross and through which you have coverage." Id. (emphasis added). The SPD,

therefore, expressly contemplates a situation like this case, where an association sponsors a plan and employers submit group applications to participate in that plan.

Montgomery Imaging Center is Mrs. Tebbetts' employer.[9] Montgomery Imaging Center signed and submitted to Blue Cross a Group Application to establish Division I-77 of the MAP. In so doing it established waiting periods and eligibility criteria. The Group Application is a significant plan document that cannot be casually ignored. See Heffner v. Blue Cross and Blue Shield of Alabama, 444 F.3d 1330, 1343 (11th Cir. 2006) (group application is part of the Contract, which is specifically listed in ERISA statute as a plan document, and "may not be wholly disregarded"). The definitions in the SPD quoted above indicate that Montgomery Imaging Center, as Mrs. Tebbetts' employer, is the entity that submitted the Group Application and entered into the contract with Blue Cross for group health coverage. MASA simply sponsored the group insurance

---

[9] Mrs. Tebbetts' Declaration on this subject, attached as Exhibit B to Plaintiffs' Memorandum Brief in Support of Motion to Remand, is irrelevant to the issue of whether an ERISA plan exists giving rise to federal jurisdiction. Mrs. Tebbetts states in her Declaration that she is employed by Montgomery Imaging Center and not by MASA, and that she voluntarily participated in what she terms the "Medical Association of the State of Alabama's Employee Group Health Care Plan," in reference to the MAP. While true, those statements have no bearing on whether an ERISA plan exists. The fact that MASA is not Mrs. Tebbetts' employer is irrelevant because Montgomery Imaging Center, who is Mrs. Tebbetts' employer, established Division I-77 of the MAP for the benefit of its employees, including Mrs. Tebbetts. The fact that Mrs. Tebbetts enrolled voluntarily in the MAP has no bearing on the ERISA analysis because Montgomery Imaging Center selected the MAP as the sole health benefits coverage for its employees. See Foshee Declaration, ¶2.

policy to which Montgomery Imaging Center subscribed in order to fund the plan and thus provide benefits for its employees.

The situation is analytically identical to that presented to the Fifth Circuit Court of Appeals in <u>McDonald v. Provident Indemnity Life Insurance Company</u>, 60 F.3d 234 (5th Cir. 1995). In that case, McDonald Equipment, a sole proprietorship, subscribed to the Business Insurance Trust[10] to obtain group health insurance for its employees and their dependents. <u>Id</u>. at 235. McDonald, an employee and the son of the sole owner, suffered accidental injuries that initially were covered by Provident until premiums increased to a point that the business could no longer afford the coverage and the policy lapsed. <u>Id</u>. McDonald and his employer sued Provident and others for excessive premium increases. The defendants raised the defense of ERISA preemption. Like this Court, the <u>McDonald</u> court was tasked with determining whether an ERISA plan existed. The district court found that the plan was governed by ERISA, and the Fifth Circuit affirmed. The Fifth Circuit framed the dispositive issue: "[W]hether McDonald Equipment's *subscription* to the BIT constituted an ERISA plan." <u>Id</u>. at 236 (emphasis in original). Therefore, the proper focus was not on the nature of

---

[10] The Business Insurance Trust was a multi-employer trust that was underwritten by a group health insurance policy issued by North Carolina Mutual. 60 F.3d at 235.

937916.1                               10

the Business Insurance Trust (analogous to the MAP in this case), but rather on the actions of the employer in arranging for the coverage.[11]

The Fifth Circuit applied a three step analysis. It first determined whether the DOL regulatory safe harbor exemption from ERISA applied.[12] The court found that the safe harbor did not apply since the employer paid the premiums. Id. at 236. The Fifth Circuit then applied the Donovan analysis for the existence of a plan and found that a plan clearly existed. Id. Finally, the court asked whether the employer established or maintained the plan for the purpose of providing benefits to its employees. It found that McDonald Equipment did so by, among other things, purchasing the insurance and selecting the benefits. The court concluded its analysis as follows: "A reasonable fact-finder could have reached but one conclusion: McDonald's subscription to the BIT constituted an ERISA plan." Id. at 236.

---

[11] McDonald also makes clear that nothing in ERISA or the case law requires that the employer create the funding mechanism *ab initio*.

[12] 29 C.F.R. §2510.3-1 (j) provides a regulatory safe harbor from ERISA for plans in which (1) the employer makes no contribution, (2) participation is completely voluntary, (3) the employer's participation is limited to permitting the insurer to publicize the program and collecting premiums through payroll deductions (all without endorsing the program), and (4) the employer receives no consideration in connection with the program. In order for the safe harbor to apply, all four elements must be met. In other words, if the plan at issue fails to satisfy only one of these elements, the safe harbor does not apply. See Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1213 (11th Cir. 1999). Since Montgomery Imaging Center selected the Blue Cross MAP as the sole coverage and paid 100% of the premium for its employees, the safe harbor is not applicable here.

In the same way, Montgomery Imaging Center has taken all actions necessary to establish and maintain an ERISA plan. Montgomery Imaging Center submitted a Group Application to Blue Cross in order to participate in the MAP as Division I-77. Decl. of Carl Caudle, ¶ 2. Montgomery Imaging Center selected the MAP as the sole health benefits coverage for its employees, established the waiting period and eligibility requirements for its employees to participate in the MAP, and pays 100 percent of the individual premium for its eligible employees that participate in the coverage by monthly check to Blue Cross. Decl. of Patricia Foshee, ¶¶ 2, 3. Thus, an ERISA plan exists, ERISA governs Plaintiffs' claims, and this Court should retain this action.

**II.    PLAINTIFFS' ARGUMENT THAT BLUE CROSS'S NOTICE OF REMOVAL IS PROCEDURALLY DEFECTIVE IGNORES THE CLEAR LANGUAGE OF 28 U.S.C. § 1446(a) GOVERNING PREREQUISITES FOR REMOVAL AND IS NOT SUPPORTED BY CASE LAW.**

Plaintiffs argue that Blue Cross's failure to attach the Returns on Service is a fatal procedural defect in removal requiring remand. Plaintiffs' argument is frivolous.

> **A.   The statute does not require that the Returns on Service be attached to the Notice of Removal because they were not "served upon" Blue Cross and CareCore.**

The statute specifying the procedure for removal of cases does not require the Return on Service to be submitted with the Notice of Removal. The removal statute provides in pertinent part:

> A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders <u>served upon such defendant or defendants</u> in such action. (emphasis added).

28 U.S.C. §1446(a).

The Returns on Service do not fall within the category of "process, pleadings, or orders" required to be submitted with the Notice of Removal because they were not "served upon" Blue Cross and CareCore.  See <u>Usatorres v. Marina Mercante Nicaraguenses, S. A.</u>, 768 F.2d 1285, 1286 (11th Cir. 1985) (holding that defendant was not required to file a copy of its motion to dismiss in the federal district court with its notice of removal because that motion was not served upon him). Defendants were served by certified mail, and the Returns on Service were not included in the papers served upon them. Because the Returns on Service were not served upon Defendants, they did not have to be filed with the Notice of Removal.

> **B.     <u>Kisor</u> does not support Plaintiffs' contention that the Notice of Removal is procedurally defective.**

Plaintiffs cite Judge Acker's decision in <u>Kisor v. Collins</u>, 338 F.Supp. 2d 1279 (N.D. Ala. 2004), in support of their contention that the Returns on Service should have been included with the Notice of Removal. <u>Kisor</u> says no such thing. In <u>Kisor</u>, the notice of removal did not include a copy of the summons served on the defendant or the return on service. 338 F. Supp. 2d at 1280. The court granted plaintiff's motion to remand based upon the defendant's non-compliance with 28 U.S.C. § 1446(a) for failure to include a copy of the summons. <u>Id.</u> at 1281. The court specifically declined to address the question of whether the return on service represents the type of "process" required by § 1446(a) to be included with the notice of removal. <u>Id.</u>

In any event, <u>Kisor</u> is an outlier in the Eleventh Circuit regarding the application of 28 U.S.C. § 1446(a). The court in <u>Kisor</u> took a rigid stance concerning the fatality to federal jurisdiction worked by non-compliance with § 1446(a). See <u>Likely v. Tricon Global Rest., Inc.</u>, 2006 U.S. Dist. LEXIS 80544 at *9 (N.D. Fla. Nov. 3, 2006)(stating that while the district court judge in Kisor rigidly interpreted § 1446(a) as requiring remand for lack of jurisdiction when the summons was not timely filed with the notice of removal, most courts have taken the view that such procedural defects have no effect on jurisdiction if the action was otherwise removable). Most courts in the Eleventh Circuit have taken a less

harsh approach to dealing with substantial but imperfect compliance with § 1446(a), viewing such non-compliance as a remediable procedural defect that does not destroy federal jurisdiction.  <u>Id.</u>  <u>See</u>, <u>e.g.</u>, <u>Stephens v. State Farm Fire and Cas. Co.</u>, 149 Fed. Appx. 908, 910 (11th Cir. 2005) (holding that although defendant failed to include a page of the complaint with the notice of removal, removal was proper); <u>Allied Am. Adjusting Co. v. Fair</u>, 2007 U.S. Dist. LEXIS 62713 at *2 (S.D. Ala. Aug. 24, 2007) (holding defendants' failure to attach a copy of the summons to the notice of removal to be a procedural, and not a substantive defect, and granting defendants leave to amend their notice of removal); <u>Likely</u>, 2006 U.S. Dist. LEXIS 80544 at *11 (holding defendants' failure to attach the summonses and complaint did not render the notice of removal irremediably defective because the defect was minor, had not unduly burdened the court, had not prejudiced the plaintiff, and could be easily remedied); <u>Woodall v. Ins. Co. of North Am.</u>, 582 F. Supp. 247, 248 (N.D. Ga. 1984) (allowing defendants to amend their notice of removal following the expiration of the 30-day statutory time limit for removal to include the requisite state court documents not included with the original notice of removal).

     Blue Cross has located no case holding that a Return on Service is an indispensable attachment to the Notice of Removal.  Neither have the Plaintiffs.

Plaintiffs' argument that the Returns on Service must be included with the Notice of Removal, therefore, is without merit.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Blue Cross respectfully requests that this Court deny Plaintiffs' Motion to Remand.

Respectfully submitted this 8th day of November, 2007.

                                                         s/Cavender C. Kimble
                                                       Cavender C. Kimble (ASB-3284-E63C)
                                                       Leigh Anne Hodge (ASB-1008-E49L)
                                                       BALCH & BINGHAM LLP
                                                       Post Office Box 306
                                                       Birmingham, AL 35201-0306
                                                       Telephone: (205) 251-8100
                                                       Facsimile: (205) 226-8798

                                                       *Attorneys for Blue Cross and Blue Shield of Alabama*

OF COUNSEL:
Cavender C. Kimble
ckimble@balch.com
Leigh Anne Hodge
lhodge@balch.com
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 488-5860

## CERTIFICATE OF SERVICE

      I hereby certify that on the <u>8th</u> day of November, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

M. Clayborn Williams
Thomas O. Sinclair
Jennifer C. Wallis
CAMPBELL, GIDIERE, LEE, SINCLAIR
    & WILLIAMS, P.C.
2100-A Southbridge Parkway, Suite 450
Birmingham, Alabama  35209

Bruce Rogers
Rebecca Eubanks
BAINBRIDGE, MIMS, ROGERS
    & SMITH, LLP
415 The Luckie Building
600 Luckie Drive
P.O. Box 530886
Birmingham, AL  35223

                                            s/Cavender C. Kimble
                                            OF COUNSEL