## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **DAVID ALLEN TEBBETTS and** | ) | |
| **CYNTHIA INGRAM TEBBETTS** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case Number: 2:07-cv-00925-MEF** |
| | ) | |
| **BLUE CROSS BLUE SHIELD OF** | ) | |
| **ALABAMA and CARECORE** | ) | |
| **NATIONAL, LLC** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' SURREPLY IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND

COME NOW Plaintiffs, David Allen Tebbetts and Cynthia Ingram Tebbetts, and file their Surreply in Support of Plaintiffs' Motion to Remand.

## I. THE PROCEDURAL DEFECTS IN THE DEFENDANTS' REMOVAL

The Defendants previously argued that "substantial but imperfect compliance" with 28 U.S.C. § 1446(a) is enough. Now the Defendants go a step further and argue that this Court's authority to establish Local Rules governing Removal is limited to imposing requirements that need be met "only <u>after</u> removal", and as such, the requirements of M.D. Ala. LR 81.1 need only be met at the Defendants' leisure. The Defendants' argument fails upon a cursory reading of the rule itself:

1

> A party who desires to remove a civil action from state court to this court pursuant to 28 U.S.C. § 1446 **must file, simultaneously with the notice of removal**, clear and legible copies of all records and proceedings from the state court.

M.D. Ala. LR 81.1   Removal: Legible Copies of State Documents Required. (Emphasis added).

The Defendants previously argued that certain "outlier cases" followed the clear language of 28 U.S.C. § 1446 too closely.  This Court's Local Rule, which makes clear the scope of what must be filed with the removal, avoids just such an argument and requires the filing of "all records and proceedings from the state court."  M.D. Ala. LR 81.1.

Finally, as to the Defendants' argument that this Court lacks the authority to "impose" requirements on removals to this Court, Rule 83 of the Federal Rules of Civil Procedure authorizes "[e]ach district court" to "make and amend rules governing its practice."  The only limitation imposed by Rule 83 on this Court's authority to promulgate local rules is the admonition that "[a] local rule shall be consistent with-but not duplicative of-Acts of Congress and rules adopted under 28 U.S.C. §§ 2072 and 2075 . . ." The only way Local Rule 81.1 is "inconsistent with" the requirements of 28 U.S.C. § 1446 is when one uses the Defendants' "substantial but imperfect compliance" interpretation of 28 U.S.C. § 1446.  Joining the Defendants' two arguments together, M.D. Ala. LR 81.1 and 28 U.S.C. § 1446

would allow a removing Defendant to choose what part of the state court record this Court sees when determining whether this Court has jurisdiction over a matter.

## II. ERISA DOES NOT APPLY TO THIS INSURANCE CONTRACT

Defendants do not appear to disagree with the fact that the insurance policy at issue originated from, and is contained within, a Multi-Employer Welfare Arrangement ("MEWA") (29 U.S.C. § 1002(40)(A)).  Instead they argue that the creation of this insurance policy by the MEWA is irrelevant when determining whether Montgomery Imaging took the requisite steps to establish an ERISA Plan. The only part of the Defendants' analysis that is correct is that only Montgomery Imaging's actions are relevant to the present analysis.

However, because the Defendants attempted to ascribe to Montgomery Imaging actions by MASA and Blue Cross Blue Shield in establishing the MEWA, it is necessary to divorce from the present case those actions by those "entrepreneurial ventures" in creating the MEWA before proceeding to the analysis of the actions of Montgomery Imaging.  In their initial briefing to this Court, Defendants attempted to blur this step and fold their actions and the actions of MASA into this Court's analysis of Montgomery Imaging's actions, providing in their Removal Petition an analysis of the "safe harbor" provisions which further

obstructed the lines between the various entities' actions.[1]  Plaintiffs' highlighted this in their Reply Brief and now Defendants contend that "new issues" were raised in Plaintiff's Reply Brief.  In fact, the MEWA issue, if new, is only so for the Defendants' strategy to ascribe their actions in establishing the MEWA to Montgomery Imaging.

As stated in *Donovan*, 688 F.2d at 1372, "the gist of ERISA's definitions of employer, employer organization, participant, and beneficiary is that a plan, fund, or program falls within the ambit of ERISA only if the plan covers ERISA participants because of their employee status and employment relationship, and an employer or employer organization is the person that establishes or maintains the plan, fund or program."  *Donovan*, 688 F.2d at 1372; s*ee also, Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1133 (1st Cir. 1995).  Now that the Defendants have been forced to drill down to just those actions by Montgomery Imaging they contend lead to the creation of an employee welfare benefit plan, the analysis of those actions leads to the conclusion that the insurance contract at issue is not part of an ERISA Plan.

---

[1] An employer's failure to adhere to the safe harbor provision does not necessitate a finding that it 'established or maintained' an ERISA plan. *See e.g., Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207 (11th Cir. 1999); *Johnson v. Watts Regulator Company,* 63 F.3d 1129 (1st Cir. 1995); *Brundage- Peterson v. Comp Care Health Services Ins. Corp.*, 877 F.2d 509, 511 (7th Cir. 1989) (recognizing that the regulation emphasizes that in creating a safe harbor it does not automatically invalidate all arrangements on the high seas."); 40 Fed. Reg. 34526 (August 15, 1975) ("Some of the practices excluded from the welfare plan definition under § 2510.3-1 are listed simply in response to questions received by the Department of Labor and do not represent what might be considered borderline cases. Therefore,  § 2510.3-1 should not be read as implicitly indicating the Department of Labors' views on the  parameters of coverage of [ERISA]".)

**A. There is no "Montgomery Imaging Plan"**

The purpose of ERISA is to protect employees, and more specifically, an employee's interest in their employer's funds in which the employee has an interest in by way of their contract for employment. Where, as in the present case, no employer funds are involved, ERISA preemption of state law claims should only be allowed after a heightened scrutiny of the actions of the employer.

"First, whether a plan is established is determined <u>by the employer's conduct, not that of any other ERISA entity</u>. The statutory definition makes it clear that only an employer can establish an employee welfare benefit plan, and case law glosses on the definition have likewise focused on the employer's actions." *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1214-15 (11th Cir. 1999) (internal citations omitted) (emphasis added). Therefore, the focus in determining whether a plan has been established or maintained by an employer is based primarily upon the actions of the employer, not how those actions are viewed. *See, e.g., Butero*, 174 F.3d 1207; *Hansen v. Continental Insurance Company*, 940 F.2d 971, 978 (5th Cir. 1991) ("To determine whether an employer established or maintained an employee benefit plan, the court should focus on the employer and its involvement with the administration of the plan.").

In *Butero*, the Court cited *Kenney v. Roland Parson Contracting Corp.*, 28 F.3d 1254, 1258 (D. D.C. 1994), identifying a seven factor test for determining whether a plan was established by the employer:

> (1) The employer's representations in internally distributed documents;
> (2) The employer's oral representations;
> (3) The employer's establishment of a fund to pay benefits;
> (4) Actual payment of the benefits;
> (5) The employer's deliberate failure to correct known perceptions of a plan's existence;
> (6) The reasonable understanding of the employees; and
> (7) The employer's intent.

*Butero*, 174 F.3d at 1215 (citing *Kenney v. Roland Parson Contracting Corp.*, 28 F.3d 1254, 1258 (D.C. 1994)); see also *Macdonald v. Provident Life and Accident Insurance Company*, 1999 WL 1330803 (S.D. Ala. 1999) (noting the focus is on the conduct of the employer, and citing to the *Kenney* factors).

Even a cursory reading of the *Kenney* factors highlights the fact that the "reasonable understanding of the employees," while possibly determinative of the endorsement question under the safe harbor provisions, is but one factor to be considered when determining whether a plan was established by an employer.

1. Internally distributed documents reveal Montgomery Imaging never represented the MASA policy to have been established or maintained by Montgomery Imaging.

The Plan itself highlights the fact that Montgomery Imaging does not represent to its employees that the MASA policy is part of an ERISA Plan

6

established or maintained by Montgomery Imaging.  As stated by Patricia Foshee,

Director of Human Resources for Montgomery Imaging:

> "the Medical Association of the State of Alabama's Group Healthcare Plan is not, to my understanding as a lay person, established or maintained by Montgomery Imaging, LLC";

> "Montgomery Imaging, LLC is not responsible for the negotiation of the terms of the Medical Association of the State of Alabama Group Healthcare Plan.  The terms of that plan are presented to us by the Medical Association of the State of Alabama";

> "Montgomery Imaging, LLC does not file with the Department of Labor or any other governmental entity any disclosures regarding the Medical Association of the State of Alabama Group Healthcare Plan.  Attached hereto as Exhibit "A" is a copy of that plan which states at page 52 the plan's sponsor is the Medical Association of the State of Alabama.  Further, the plan states that the plan administrator is the Medical Association of the State of Alabama.  Montgomery Imaging, LLC is not mentioned anywhere in the plan document.  The plan's official name is: Medical Association of the State of Alabama Group Healthcare Plan

Doc. No. 19-2, Foshee Declaration at ¶¶ 12, 13, 17.

Clearly, in internal documents distributed both within Montgomery Imaging

and directly to employees, Montgomery Imaging represented that the MASA

insurance policy was not established by Montgomery Imaging.  Therefore, the first

of the *Kenney* factors weighs in favor of finding the policy in question was not established by Montgomery Imaging.

2. <u>Montgomery Imaging's oral representations made clear that Montgomery Imaging did not establish the policy in question.</u>

In this case the policy in question claims that all oral representations regarding the policy in question are superseded by the MASA policy language, and that only MASA policy will govern the parties' rights and obligations. Doc. No. 19-2, Foshee Declaration at Exhibit 1, MASA Policy. The Defendants have not offered any evidence that Montgomery Imaging makes any representations contrary to the terms of the insurance policy. In fact, as stated by the Director of Human Resources at Montgomery Imaging; "Participation of our employees is purely voluntary. They are not required to participate in the Medical Association of the State of Alabama Group Healthcare Plan." Doc. No. 19-2, Foshee Declaration at ¶ 18.

The oral representations of Montgomery Imaging make clear the MASA insurance policy was not established by Montgomery Imaging. Therefore, the second factor of the *Kenney* test weighs in favor of finding Montgomery Imaging did not establish the policy at issue.

3. <u>Montgomery Imaging did not establish a fund to pay benefits under the insurance policy.</u>

"The essential feature of a funded plan is that its assets are segregated from the general assets of the employer and are not available to general creditors if the employer becomes insolvent." *Northwestern Mutual Life Insurance Co. v. Resolution Trust Corp.*, 848 F.Supp. 1515, 1517 (N.D. Ala. 1994). In this case "Montgomery Imaging, LLC does not have a contract with Blue Cross Blue Shield to provide benefits to our employees. If our employees elect to participate in the Medical Association of the State of Alabama Group Healthcare Plan, as a convenience to our employees, we provide payroll deduction for family coverage and provide individual coverage with the plan solely at the election of our employees." Doc. No. 19-2, Foshee Declaration at ¶ 16. It is undisputed that Mrs. Tebbetts paid 100% of the premium for her husbands coverage.

Additionally, it is undisputed that "Montgomery Imaging, LLC receives no benefit for the participation of its employees in the Medical Association of the State of Alabama Group Healthcare Plan." Id. at ¶ 15. In the present case, it is clear that there are no "segregated funds" belonging to Montgomery Imaging that are available to its employees if the MASA policy were to become insolvent. *Northwestern Mutual Life Insurance Co.,* 848 F.Supp. at 1517. In fact, there are no Montgomery Imaging funds or assets available to satisfy any liability under the policies sold by MASA and Blue Cross Blue Shield. Therefore, this is an unfunded plan from the standpoint that the employer does not provide any

9

consideration, or assets, either for the purchase of or for satisfaction of liability under the contract at issue. Consequently, this third factor under the *Kenney* test weighs in favor of finding that Montgomery Imaging did not establish the MASA policy at issue.

    4.  <u>Montgomery Imaging does not pay benefits under policy at issue.</u>

It is undisputed that Montgomery Imaging does not pay benefits under the MASA policy at issue and Montgomery Imaging does not make any determinations on whether to pay certain claims.

> Montgomery Imaging, LLC is not responsible for the negotiation of the terms of the Medical Association of the State of Alabama Group Healthcare Plan. The terms of that plan are presented to us by the Medical Association of the State of Alabama.

Doc. No. 19-2, Foshee Declaration at ¶ 13 and Exhibit 1, MASA Policy.

It is clear that Montgomery Imaging had no involvement in the payment of benefits, or the determination of whether to pay benefits. Therefore, the fourth factor under the *Kenney* test weighs in favor of finding that Montgomery Imaging did not establish the policy at issue.

    5.  <u>The Policy at issue could not create any perception of the existence of a "Montgomery Imaging Plan"</u>

The fifth factor in the *Kenney* test is focused upon "the employer's deliberate failure to correct known perceptions of a plan's existence." *Kenney*, 28

F.3d at 1258.  In the present case, no perception of a "Montgomery Imaging Plan" could be created given the clear and unequivocal language of the policy itself:

> Attached hereto as Exhibit "A" is a copy of that plan which states at page 52 the plan's sponsor is the Medical Association of the State of Alabama. Further, the plan states that the plan administrator is the Medical Association of the State of Alabama.  Montgomery Imaging, LLC is not mentioned anywhere in the plan document.

Doc. No. 19-2, Foshee Declaration at  ¶ 17.

Clearly, no "perception" of a "Montgomery Imaging Plan" existed to correct.   In the present case, Montgomery Imaging took steps to avoid any misperception that an ERISA plan existed which was established by Montgomery Imaging.  Therefore, the fifth factor of the *Kenney* test weighs in favor of finding that the MASA policy is not established by Montgomery Imaging.

6. <u>Montgomery Imaging employees' reasonable understanding of the MASA policy</u>.

The sixth factor of the *Kenney* test requires a determination as to the "reasonable understanding of employees." *Kenney*, 28 F.3d at 1258.  In the present case, the facts show that the sixth factor of the *Kenney* test weighs in favor of finding the MASA policy is not established by Montgomery Imaging for the same reasons set out under the fifth factor.  The very terms of the policy and even the name of the policy dictate no reasonable perception could exist that the policy was part of a "Montgomery Imaging Plan".  "The plan's official name is: Medical

Association of the State of Alabama Group Healthcare Plan." Doc. No. 19-2,

Exhibit 1, Medical Association of the State of Alabama Group Healthcare Plan at

pp. 52

### 7. Montgomery Imaging's intent

The seventh *Kenney* factor focuses on the employer's intent. Here,

Montgomery Imaging's testimony indicates it did not intend to establish an

ERISA plan:

> Montgomery Imaging, LLC employees are able to participate in the Medical Association of the State of Alabama Group healthcare Plan because some of our physicians are members of the Medical Association of the State of Alabama.
>
> Montgomery Imaging, LLC receives no benefit for the participation of its employees in the Medical Association of the State of Alabama Group Healthcare Plan.
>
> Montgomery Imaging, LLC does not have a contract with Blue Cross Blue Shield to provide benefits to our employees. If our employees elect to participate in the Medical Association of the State of Alabama Group Healthcare Plan, as a convenience to our employees, we provide payroll deduction for family coverage and provide individual coverage with the plan solely at the election of our employees.
>
> Montgomery Imaging, LLC does not file with the Department of Labor or any other governmental entity any disclosures regarding the Medical Association of the State of Alabama Group Healthcare Plan. Attached hereto as Exhibit "A" is a copy of that plan which states at page 52 the plan's sponsor is the Medical Association of the State of Alabama. Further, the plan states that the

> plan administrator is the Medical Association of the State of Alabama. Montgomery Imaging, LLC is not mentioned anywhere in the plan document.
>
> Participation of our employees is purely voluntary. They are not required to participate in the Medical Association of the State of Alabama Group Healthcare Plan.

Doc. No. 19-2, Foshee Declaration at ¶¶ 13 to 18.

Clearly, Montgomery Imaging's intent was not to establish an employee welfare benefit plan. Therefore, the seventh factor of the *Kenney* test weighs in favor of finding the MASA policy was not established by Montgomery Imaging.

Because the Defendants fail to establish any of the seven *Kenney* factors, they cannot show that the MASA policy falls within the definition of an employee welfare benefit plan.

### B. The Defendants failed to follow ERISA regulations

As noted by the Eleventh Circuit, the key is to look at the employer's actions, not the actions of any other ERISA entity. *Butero*, 174 F.3d at 1207. When viewing Montgomery Imaging's actions, it becomes apparent that Montgomery Imaging did not participate in the administration of the MASA policy, and therefore, cannot be said to have maintained the MASA policy. In fact, several "facts" cited by the Defendants in their argument that Montgomery Imaging maintained this policy are actions undertaken by the Defendants to

attempt to bring ERISA to bear.  As a district court has found in similar circumstances,

> . . . [C]ertain entrepreneurs have undertaken to market insurance products to employers and employees at large, claiming these products to be ERISA covered plans.  The entrepreneur will then argue that his enterprise is an ERISA benefit plan which is protected, under ERISA's preemption provision, from state regulation.  We are concerned with this type of development . . . These plans are established and maintained by entrepreneurs for the purpose of marketing insurance products or services to others.   They are not established or maintained by the appropriate parties to confer ERISA jurisdiction, nor is the purpose for their establishment or maintenance appropriate to meet the jurisdictional prerequisites of the act.  They are no more ERISA plans than is any other insurance policy sold to an employee benefit plan.  We do not believe that the statute and legislative history will support the inclusion of what amounts to commercial products within the umbrella of the definition.

*Letner v. Unum Life Insurance Company of America*, 203 F.Supp. 2d 1291, 1298 (N.D. Fla. 2001) (quoting *Hamberlin V. VIP Ins. Trust*, 434 F. Supp. 1196, 1199 (D.C. Ariz.1977)).

In the present case, the Defendants are nothing more than an entrepreneurial venture in the form of an insurance company which attempts to bring ERISA to bear by attempting to intertwine the employer in the policy.  The Defendants' actions should not be considered when determining whether the employer, Montgomery Imaging Industries, maintained the policy at issue.  *See e.g., Butero*, 174 F.3d at 1207.

14

The self serving nature of the Defendants ERISA arguments are further highlighted by their own failure to adhere to the ERISA requirements:

> It is our understanding that the Defendants in this matter now contend that Employee Retirement Income Security Act of 1974 ("ERISA") applies to our claims.

> It is our understanding that attached hereto as Exhibit 1 is a copy of the Medical Association of the State of Alabama Group Health Care Plan. On page 30 that document states "Even if your plan is not covered by ERISA, we will process your claim according to ERISA's standards and provide you with the ERISA appeal rights that are discussed in this section of your booklet."

> This document states at page 32: "If you attempt to file a pre-service claim but fail to follow our procedures for doing so, we will notify you of the failure within twenty-four hours (for urgent pre-service claims) or five days (for non-urgent pre-service claims). **We never received any such notice from either Defendant.**

> This document states at page 32: "If your claim is urgent, we will notify you of our decision within seventy-two hours. If we need more information we will let you know within twenty-four hours of your claim. We will tell you what further information we need. You will then have forty-eight hours to provide this information to us. We will notify you of our decision within forty-eight hours after we receive the requested information." **We never received any such notice from either Defendant.**

> This document states at page 32: "If your claim is not urgent, we will notify you of our decision within fifteen days. If we need more information, we will let you know before the fifteen day period expires. We will tell you what further information we need." **We never received any such notice from either Defendant.**

This document states at page 33: "You have the right, upon request, to receive copies of any documents that we relied on in reaching our decision and any documents that were submitted, considered, or generated by us in the course of reaching our decision. You also have the right to receive copies of any internal rules, guidelines, or protocols that we may have relied upon in reaching our decision.  If our decision was based on a medical or scientific determination (such as medical necessity), you may also request that we provide you with a statement explaining our application of those medical and scientific principles to you.  If we obtained advice from a healthcare professional (regardless of whether we relied on that advice), you may request that we give you the name of that person."  **We have not received the information requested.**

This document states at page 33: "The rules in this section of the booklet allow you or your authorized representative to appeal any adverse benefit determination.  An adverse benefit determination includes any one or more of the following: . . . our denial of a pre-service claim;".  **We never received notice from either Defendant of any appeal rights with regard to their decisions which we contend led to the injuries set out in our Complaint.  In fact, the Defendants did not send us any notice of their adverse benefit determination.**

This document states at page 51: "If your claim for a welfare benefit is denied or ignored, in whole or in part, you have the right to know why this was done, to obtain copies of documents relating to decision without charge, and to appeal any denial, all within certain time schedules."  **The Defendants never sent us any notice of our rights which the Defendants now assert we have under ERISA with regard to their adverse benefit determination.**

Declaration of David Allen Tebbets and Cynthia Ingram Tebbetts attached hereto as Exhibit 1 at ¶¶ 2 to 9 (internal citations omitted) (emphasis added).

Overall, it becomes clear that every fact cited by the Defendants in support of the contention that Montgomery Imaging maintains the policy, or that Montgomery Imaging is involved in the maintenance of the policy in question, is in fact an action by the Defendants attempting to intertwine Montgomery Imaging with the policy. The Defendants are nothing more than entrepreneurs who have "undertaken to market insurance products to employers and employees at large, claiming these products to be ERISA covered plans" while at the same time refusing to comply with ERISA's procedures in their administration of the policy. See *Letner*, 203 F.Supp. 2d at 1298, n.4.

C. **There is No Insurance Contract between Montgomery Imaging and Blue Cross Blue Shield**.

At the outset, it should be noted that even if there was a contract of insurance between Montgomery Imaging and Blue Cross Blue Shield, an employer who "does no more than purchase insurance for her employees, . . . has not established an ERISA plan." *Hansen v. Continental Insurance Company*, 940 F.2d 971, 978 (5th Cir. 1991); *see also Butero*, 174 F.3d at 1214 ("A plan is established when there has been some degree of implementation by the employer going beyond the mere intent to confer a benefit."). Therefore, even if the Defendants were correct in arguing that a contract of insurance exists between Montgomery

17

Imaging and Blue Cross Blue Shield, the mere fact of that contract would not be dispositive in the determination of whether Montgomery Imaging established or maintained the policy in question.  *Id.*  However, in the present case, there is no contract of insurance between Montgomery Imaging and Blue Cross Blue Shield.

An insurance contract, like any other contract, must "result from an offer and an acceptance of that offer" and "must encompass the following essential terms: subject-matter, risk, amount of insurance, premium, duration of risk and identity of parties."  *Nu-Air Manufacturing Co. v. Frank B. Hall & Co. of New York*, 822 F.2d 987, 990 (11th Cir. 1987).  In the present case, analysis of the elements required in order to establish an insurance contract between Montgomery Imaging and Blue Cross Blue Shield reveals the relationship between Montgomery Imaging and Blue Cross Blue Shield to be nothing more than an employer allowing an insurance company to solicit its employees.

     1.  <u>No Consideration</u>

Montgomery Imaging has testified that: "Montgomery Imaging, LLC does not have a contract with Blue Cross Blue Shield to provide benefits to our employees." Doc. No. 19-2, Foshee Declaration at ¶7. "Montgomery Imaging, LLC receives no benefit for the participation of its employees in the Medical Association of the State of Alabama Group Healthcare Plan." Id. at ¶6.

     2.  <u>No Risk</u>

The head of Human Resources at Montgomery Imaging Industries makes clear that Blue Cross Blue Shield took on no additional risk in relation to the corporate entity of Montgomery Imaging, LLC, and that the only risk undertaken by Blue Cross Blue Shield occurs when Blue Cross Blue Shield sells policies to Montgomery Imaging employees.

Clearly, there is no contract of insurance between Montgomery Imaging and Blue Cross Blue Shield, and therefore, this additional factor should be considered when the Court makes its determination as to whether Montgomery Imaging established or maintained the policy in question.

## III.   CONCLUSION

In making its determination as to whether or not Montgomery Imaging established or maintained this insurance policy as part of an ERISA employee welfare benefit plan, the Plaintiffs would ask this Court to keep in mind the purpose of ERISA:

> Congress enacted ERISA to protect working men and women from abuses in the administration and investment of private retirement plans and employee welfare plans.

*Donovan*, 688 F.2d at 1370; *see also Johnson*, 63 F.3d at 1132 ("Congress enacted ERISA to protect the interests of the participants in employee benefit plans.").

The present case presents this Court with the ultimate decision of whether the purpose of the statute will be turned on its head so that it may protect insurance companies from accountability for decisions such as the one in the present case.

The purpose of the statute is not to protect the interests of the insurance company; rather, it is to protect the interests of the employee and the benefits made available by way of the employee's employment contract with their employer. In the present case, there are two contracts: an employment contract between Mrs. Tebbetts and Montgomery Imaging and an insurance contract between Mr. and Mrs. Tebbetts and Blue Cross Blue Shield.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request this Honorable Court REMAND this matter to the Circuit Court of Montgomery County, Alabama.

Respectfully Submitted,

/s/ Thomas O. Sinclair
One of the Attorneys for Plaintiff

**OF COUNSEL:**
M. Clayborn Williams
Thomas O. Sinclair
Jenifer Champ Wallis
CAMPBELL, GIDIERE, LEE, SINCLAIR & WILLIAMS
2100-A SouthBridge Parkway, Suite 450
Birmingham, Alabama 35209
Ph:    (205) 803-0051
Fax:   (205) 803-0053
E-mail:  cwilliams@cgl-law.com
E-mail:  tsinclair@cgl-law.com
E-mail:  jwallis@cgl-law.com

20

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on the 3rd day of December, 2007, a copy of the foregoing was filed electronically using this Court's electronic filing system. Notice of this filing is due to be served by operation of the Court's electronic filing system to the following parties indicated on the electronic filing receipt as participants in the Courts CM/ECF system:

Cavender C. Kimble
Leigh Anne Hodge
Robin Amy Franco
BALCH & BINGHAM, LLP
Post Office Box 306
Birmingham, AL  35201-0306

Bruce F. Rogers
Rebecca C. Eubanks
BAINBRIDGE, MIMS, ROGERS & SMITH, LLP
Post Office Box 530886
Birmingham, Alabama 35253

And that the following parties were served via US Mail:
NONE.

<u>/s/ Thomas O. Sinclair</u>
OF COUNSEL

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVID ALLEN TEBBETTS and )
CYNTHIA INGRAM TEBBETTS )
)
     Plaintiffs, )
)
vs. )       CASE NUMBER: 2:07-cv-00925-MEF
)
BLUE CROSS BLUE SHIELD OF )
ALABAMA; )
CARECORE )
NATIONAL, LLC )
)
     Defendants. )

## DECLARATION OF DAVID ALLEN TEBBETTS AND CYNTHIA INGRAM TEBBETTS

Pursuant to 28.U.S.C. § 1746, the undersigned, David Allen Tebbetts and Cynthia Ingram Tebbetts state as follows:

1. The statements made herein are based upon our personal knowledge. We are both over the age of 21 years, and are residents of the State of Alabama, and are further competent to testify to the statements set forth in this Declaration.

2. It is our understanding that the Defendants in this matter now contend that Employee Retirement Income Security Act of 1974 ("ERISA") applies to our claims.

3. It is our understanding that attached hereto as Exhibit 1 is a copy of the Medical Association of the State of Alabama Group Health Care Plan. On page 30 that document states "Even if your plan is not covered by ERISA, we will process your claim according to ERISA's standards and provide you with the ERISA appeal rights that are discussed in

1

EXHIBIT 1

this section of your booklet." Exhibit 1, <u>Medical Association of the State of Alabama Group Health Care Plan</u> at p. 30.

4.  This document states at page 32: "If you attempt to file a pre-service claim but fail to follow our procedures for doing so, we will notify you of the failure within twenty-four hours (for urgent pre-service claims) or five days (for non-urgent pre-service claims). Id. at p. 32. We never received any such notice from either Defendant.

5.  This document states at page 32: "If your claim is urgent, we will notify you of our decision within seventy-two hours. If we need more information we will let you know within twenty-four hours of your claim. We will tell you what further information we need. You will then have forty-eight hours to provide this information to us. We will notify you of our decision within forty-eight hours after we receive the requested information." Id. at p. 32. We never received any such notice from either Defendant.

6.  This document states at page 32: "If your claim is not urgent, we will notify you of our decision within fifteen days. If we need more information, we will let you know before the fifteen day period expires. We will tell you what further information we need." Id. at p. 32. We never received any such notice from either Defendant.

7.  This document states at page 33: "You have the right, upon request, to receive copies of any documents that we relied on in reaching our decision and any documents that were submitted, considered, or generated by us in the course of reaching our decision. You also have the right to receive copies of any internal rules, guidelines, or protocols that we may have relied upon in reaching our decision. If our decision was based on a medical or scientific determination (such as medical necessity), you may also request that we provide you with a statement explaining our application of those medical and scientific

2

principles to you. If we obtained advice from a healthcare professional (regardless of whether we relied on that advice), you may request that we give you the name of that person." Id. at p. 33. We have not received the information requested.

8. This document states at page 33; "The rules in this section of the booklet allow you or your authorized representative to appeal any adverse benefit determination. An adverse benefit determination includes any one or more of the following; . . . our denial of a pre-service claim;". Id. at p. 33. We never received notice from either Defendant of any appeal rights with regard to their decisions which we contend led to the injuries set out in our Complaint. In fact, the Defendants did not send us any notice of their adverse benefit determination.

9. This document states at page 51: "If your claim for a welfare benefit is denied or ignored, in whole or in part, you have the right to know why this was done, to obtain copies of documents relating to decision without charge, and to appeal any denial, all within certain time schedules." Id. at p. 51. The Defendants never sent us any notice of our rights which the Defendants now assert we have under ERISA with regard to their adverse benefit determination.

We declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on this $\underline{29^{th}}$ day of November, 2007.


David Allen Tebbetts                                    Cynthia Ingram Tebbetts

3







# Group Health Care Plan

# Medical Association of the State of Alabama

## Medical Assistants' Plan



**BlueCross BlueShield of Alabama**

An Independent Licensee of the
Blue Cross and Blue Shield Association.

**Effective January 1, 2006**

EXHIBIT 1

# WELCOME

All of us at Blue Cross and Blue Shield of Alabama pledge to you we will provide the best service we can in the administration of your group health plan. The following information summarizes your group's benefits. It also summarizes conditions, limitations, and exclusions to those benefits. There are sections explaining eligibility and defining certain words, too. Please be sure to read this information in its entirety. This information is a "summary plan description" or "plan" as defined by ERISA, the **E**mployee **R**etirement **I**ncome **S**ecurity **A**ct of 1974 as amended.

Blue Cross and Blue Shield of Alabama is an independent corporation operating under a license from the Blue Cross and Blue Shield Association, an association of **independent** Blue Cross and Blue Shield Plans. The Blue Cross and Blue Shield Association permits us to use the Blue Cross and Blue Shield service marks in the state of Alabama. Blue Cross and Blue Shield of Alabama is not acting as an agent of the Association. No representation is made that any organization other than Blue Cross and Blue Shield of Alabama and your employer will be responsible for honoring this contract. The purpose of this paragraph is for legal clarification; it does not add additional obligations on the part of Blue Cross and Blue Shield of Alabama not created under the original agreement.

If you have any questions which the person in your company who deals with employee benefits cannot answer, please contact the Blue Cross and Blue Shield of Alabama Customer Service Department.

This booklet contains a summary in English of your plan rights and benefits. If you have questions about your benefits please contact Customer Service at 1 800 292-8868. Simply request a Spanish translator and one will be provided to assist you in understanding your benefits.

*Atención por favor - SpanishEste folleto contiene un resumen en inglés de sus beneficios y derechos del plan. Si tiene alguna pregunta acerca de sus beneficios, por favor póngase en contacto con el departamento de Servicio al Cliente llamando al 1 800 292-8868. Solicite simplemente un intérprete de español y se proporcionará uno para que le ayude a entender sus beneficios.*

Group Number 80621

# TABLE OF CONTENTS

SUMMARY OF HEALTH BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

ELIGIBILITY AND PRE-EXISTING CONDITION EXCLUSION PERIODS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

COBRA COVERAGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

BENEFIT CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

HEALTH BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

COORDINATION OF BENEFITS (COB) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

SUBROGATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

CLAIMS AND APPEALS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

GENERAL INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

HEALTH BENEFIT EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44

STATEMENT OF ERISA RIGHTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .50

# SUMMARY OF HEALTH BENEFITS

This table is a summary of benefits and is subject to all other terms and conditions of the Plan:

**To maximize your benefits seek medical services from a Preferred Provider who participates in the BlueCard Preferred Provider Organization (PPO) Program. Please call 1 800 810-BLUE (2583) or access our web site at www.bcbsal.com to find out if your provider is a PPO member. When using Non-Preferred providers you can incur significant out-of-pocket expenses in addition to higher deductibles, copays and coinsurance as the provider may bill you for charges in excess of the Allowed Amount (see Allowed Amount in the Definitions section of this booklet).**

Please be aware that not all providers participating in the BlueCard PPO Program will be recognized by us as approved providers for the type of service or supply being furnished as explained more fully in paragraph 5 of "Benefit Conditions."

| INPATIENT HOSPITAL | | |
|---|---|---|
| **Benefit** | **PPO** | **Non-PPO *** |
| Coverage | 365 days of care during each confinement*; $300 deductible per admission**; covered inpatient expenses paid at 100% of the PPO Allowance | 365 days of care during each confinement*; $300 deductible per admission**; covered inpatient expenses paid at 80% of the Allowed Amount |
| Preadmission Certification | Required for all admissions except maternity; emergency admissions require notification within 48 hours of admission; **for precertification call 1 800 248-2342 toll-free** | |
| Inpatient Mental and Nervous/Substance Abuse | 100% of the PPO Allowance, subject to the inpatient deductible*; limited to 30 days each 12 consecutive months | 80% of the Allowed Amount, subject to the inpatient deductible*; limited to 30 days each 12 consecutive months |

\*    If you are discharged from and readmitted to a hospital within 90 days, the days of each stay will apply toward your 365 day maximum; inpatient hospital days are limited to a combined PPO and Non-PPO maximum of 365 days for each confinement; mental and nervous disorders (including substance abuse) are limited to a combined PPO and Non-PPO maximum of 30 days.

\*\*  The deductible is due for each admission or readmission; however, only one deductible is due per pregnancy, during transfers from one hospital to another, or when two or more family members are admitted as inpatients as a result of injuries received in one accident.

\*\*\* If you receive inpatient hospital services or supplies in Alabama in a Non-Participating/Non-PPO hospital, benefits are available only for accidental injury.

| OUTPATIENT HOSPITAL * | | |
|---|---|---|
| **Benefit** | **PPO** | **Non-PPO ** ** |
| Accidental Injury | 100% of the PPO Allowance, no deductible or copay applicable | 100% of the Allowed Amount when services are rendered within 72 hours of the accident; after 72 hours, 80% of the Allowed Amount, subject to the calendar year deductible |
| Surgery and Medical Emergencies | 100% of the PPO Allowance, subject to a $100 facility copay | 80% of the Allowed Amount, subject to the calendar year deductible |
| Diagnostic Lab and X-ray, IV Therapy, Radiation Therapy and Chemotherapy | 100% of the PPO Allowance, no deductible | 80% of the Allowed Amount, subject to the calendar year deductible |

\*    Outpatient hospital services will be processed as Other Covered Services rather than as Outpatient Hospital Benefits if (1) the facility bills for an emergency room visit but the patient's condition does not meet the definition of a medical emergency (this includes any lab and x-ray exams, diagnostic tests and other services or supplies associated with the

emergency room fee), or (2) the services or supplies you receive are not listed in the table above.

** If you receive outpatient hospital services from a Non-Participating/Non-PPO hospital in Alabama, benefits are available only for accidental injury.

| PREFERRED HOME HEALTH AND HOSPICE BENEFITS* | | |
|---|---|---|
| Benefit | PPO | Non-PPO |
| Preferred Home Health and Hospice Care Within the State of Alabama | 100% of the PPO Allowance, no deductible | Not covered |
| Preferred Home Health and Hospice Care Outside the State of Alabama | 100% of the PPO Allowance, no deductible; **precertification is required - call 1 800 821-7231** | 80% of the Allowed Amount, subject to the calendar year deductible; the remaining percentage applies toward the annual out-of-pocket maximum; **precertification is required - call 1 800 821-7231** |

*   Any covered expenses for Preferred Home Health Care and covered Non-PPO expenses for Preferred Hospice Care apply toward the lifetime maximum.

| PHYSICIAN SERVICES | | |
|---|---|---|
| Benefit | PPO | Non-PPO |
| Surgery and Anesthesia, In-Hospital Visits, Second Surgical Opinions and Inpatient Consultations | 100% of the PPO Allowance, no deductible | 80% of the Allowed Amount, subject to the calendar year deductible |
| Diagnostic X-Rays and Lab Exams | 100% of the PPO Allowance, no deductible | 80% of the Allowed Amount, subject to the calendar year deductible |
| Office Care Services, Emergency Room Services and Outpatient Consultations | 100% of the PPO Allowance, subject to the $35 office copayment | 80% of the Allowed Amount, subject to the calendar year deductible |

| PREVENTIVE CARE SERVICES | | |
|---|---|---|
| Benefit | PPO | Non-PPO |
| In-Hospital Routine Newborn Care | 100% of the PPO Allowance, no deductible or copayment | Not covered |
| Routine Well Child Care | 100% of the PPO Allowance, subject to the $35 copayment; includes coverage for nine visits during the first two years and one visit per year thereafter through age six | Not covered |
| Routine Immunizations | 100% of the PPO Allowance, no deductible or copayment | Not covered |
| Routine Pap Smears | 100% of the PPO Allowance with no deductible; limited to one per year for females | Not covered |

4

| PREVENTIVE CARE SERVICES - Continued | | |
|---|---|---|
| **Benefit** | **PPO** | **Non-PPO** |
| **Routine Mammogram**<br><br>**See Mastectomy and Mammograms (later in this booklet) for additional information** | 100% of the PPO Allowance with no deductible; limited to one exam for women between the ages of 35 and 39 and one per year for women ages 40 and over | Not covered |
| **Routine Prostate Specific Antigen** | 100% of the PPO Allowance; limited to one exam per year for males ages 40 and over | Not covered |
| **Colorectal Cancer Screening – Ages 50 and Over**<br><br>  **Fecal occult blood test (FOBT) once per calendar year;**<br><br>  **Flexible sigmoidoscopy once every three calendar years;**<br><br>  **Double-contrast barium enema once every five calendar years;**<br><br>  **Colonoscopy once every 10 calendar years**<br><br>**See Colorectal Cancer Screenings (later in this booklet) for additional information** | 100% of the PPO Allowance, no deductible<br><br>NOTE: Claims for facility charges will be processed under your Outpatient Hospital Benefits and subject to any applicable outpatient copayments | Not covered |

| NON-PPO PHYSICIAN BENEFITS IN ALABAMA | |
|---|---|
| **Benefits** | |
| **Emergency Room Care**<br><br>**Office Visit and Outpatient Consultations**<br><br>**Surgery and Assistant Surgery**<br><br>**Anesthesia**<br><br>**Laboratory and Pathology**<br><br>**X-rays**<br><br>**Chemotherapy and Radiation Therapy**<br><br>**Second Surgical Opinion**<br><br>**In-Hospital Medical Care**<br><br>**In-Hospital Consultation** | 50% of the PPO Fee Schedule subject to the $400 calendar year deductible |

5

| GENERAL PROVISIONS | |
|---|---|
| Calendar Year Deductible | $400 per person per calendar year; $1,200 per family* |
| Annual Out-of-Pocket Maximum | $400 per person (applicable to Other Covered Services and Point-of-Sale Prescription Drugs) plus the calendar year deductible; covered expenses paid at 100% of the Allowed Amount thereafter for the remainder of the calendar year** |
| Lifetime Maximum | $1,000,000 lifetime maximum for each covered member; applies only to Other Covered Services, Point-of-Sale Prescription Drugs, Non-PPO Outpatient Hospital Services, Non-PPO Physician Services, Mental Health and Substance Abuse Physician Services unless otherwise stated*** |

\* Only one deductible is required when two or more family members have expenses resulting from injuries received in one accident. When covered charges are paid to meet the deductible for services rendered in October, November, or December, the deductible will not be required the following year.

\*\* Non-covered expenses and expenses for outpatient Mental Health and Substance Abuse do not apply toward the Annual Out-of-Pocket Maximum.

\*\*\* Expenses for accidental injury rendered within 72 hours of the accident in the outpatient department of a Non-PPO facility do not apply toward the Lifetime Maximum.

| OTHER COVERED SERVICES | |
|---|---|
| Benefit* | |
| Durable Medical Equipment** | 80% of the Allowed Amount, subject to the calendar year deductible |
| Occupational Therapy, Physical Therapy, Speech Therapy** <br><br> Limited to a combined maximum of 30 visits per person each calendar year | 80% of the Allowed Amount, subject to the calendar year deductible <br><br> **Non-Preferred Occupational and Physical Therapists in Alabama:** 50% of the Allowed Amount, subject to the calendar year deductible |
| Ambulance Service | 80% of the Allowed Amount, subject to the calendar year deductible |
| Inpatient Mental and Nervous/Substance Abuse | **PPO:** 80% of the Allowed Amount, subject to calendar year deductible <br><br> **Non-PPO:** 80% of the Allowed Amount, subject to the calendar year deductible |
| Outpatient Mental and Nervous/Substance Abuse | 80% of the Allowed Amount, subject to the calendar year deductible; limited to 30 visits per person each calendar year |
| Chiropractic Services | 80% of the Allowed Amount, subject to the calendar year deductible <br><br> Chiropractic services are limited to 12 visits or $400 per person each calendar year, whichever occurs first |
| Allergy Testing and Treatment | 80% of the Allowed Amount, subject to the calendar year deductible |

\* See Other Covered Services in the Health Benefits section for additional services. Most Other Covered Services are paid at 80% of the Allowed Amount after the calendar year deductible is met.

\*\* When using a Preferred or Participating Provider, the provider will bill us and we will pay him or her directly. If you see a Non-Preferred or Non-Participating Provider, you may have to file your claim and you will be responsible for charges in excess of the Allowed Amount.

6

| PRESCRIPTION DRUGS | |
|---|---|
| **Benefit** | |
| **Point-of-Sale Drug Program** | **Generic:** 80% when purchased at a Participating Pharmacy, subject to the calendar year deductible<br><br>**Brand:** 80% when purchased at a Participating Pharmacy, subject to the calendar year deductible<br><br>**Note:** No benefits are available for prescription drugs purchased at a Non-Participating Pharmacy |

| BABY YOURSELF PROGRAM | |
|---|---|
| **Benefit** | |
| **Baby Yourself** | A prenatal wellness program with high-risk pregnancy early intervention |

| INDIVIDUAL CASE MANAGEMENT | |
|---|---|
| **Benefit** | |
| **Individual Case Management** | Services available through Comprehensive Managed Care; see the Individual Case Management section for details |

# ELIGIBILITY AND PRE-EXISTING CONDITION EXCLUSION PERIODS

## Who Is Eligible for This Plan?

You are eligible to enroll in this plan if all of the following requirements are satisfied:

1.  you are an employee of your employer and are treated as an employee (as opposed to an independent contractor) by your employer;

2.  you work 30 or more hours per week (including vacation and certain leaves of absence that are discussed in the section below dealing with termination of coverage);

3.  you are in a category or classification of employees that is covered by the plan;

4.  you meet any other eligibility or participation rules established by us or your employer; and,

5.  you satisfy any applicable waiting period, as explained below.

You must continue to meet these eligibility conditions for the duration of your participation in the plan.

## Is There a Waiting Period Under the Plan?

There is a waiting period under the plan. This means that you may enroll in the plan after a specified number of days of continuous employment. Please contact your group administrator to determine the number of days applicable to you. If you are a new employee, the waiting period begins to run on the first day that you report to active duty. Thereafter, days of employment include days during which you are unable to report to work because of an illness or injury. Coverage will begin on the date specified below under "When Does Coverage Begin?" Coverage may also be subject to a pre-existing condition exclusion. See the section below called "Will I be Subject to a Pre-Existing Condition Exclusion Period?"

7

## How Do I Apply for the Plan?

Fill out an application form completely and give it to your employer or group. You must name all eligible dependents to be covered on the application. Your employer or group will collect all of the employees' applications and send them to us.

## Which of My Dependents Is Eligible?

Your eligible dependents are:

1.  your spouse (of the opposite sex);

2.  an unmarried child under age 19;

3.  an unmarried child age 19 to 25 while a full-time student in a state accredited school, not working full-time and chiefly depending on you for support;

4.  an incapacitated child who is not able to support himself and who depends on you for support, if the incapacity occurred before age 19 (or 25 if a "full-time student"); and,

5.  an unmarried child not employed on a regular full-time basis and chiefly dependent upon the subscriber for support, and on whose behalf the subscriber makes the payment for coverage.

The child may be:

1.  a natural child,

2.  a stepchild residing in the household of the eligible employee,

3.  a legally adopted child,

4.  a child placed for adoption; or,

5.  any other unmarried child for whom the employee has permanent legal custody and who depends solely on the employee for support and regularly and permanently resides with the employee in a parent-child relationship.

A grandchild is only eligible if he or she meets all of the following guidelines: (1) under 19 years of age; (2) unmarried; (3) chiefly dependent on the employee for support; (4) resides in the same household full-time with the employee in a parent-child relationship; and (5) is not employed on a regular full-time basis. The grandchild's parent may not be covered by the employee's contract unless the grandchild has been adopted by the grandparents and the parent meets all of the other conditions to be covered as a dependent. A grandchild may continue coverage under the plan up to age 25 if unmarried and a full-time student in a state accredited school, not working full time, and chiefly dependent upon the employee for support.

## When Does Coverage Begin?

*Regular Enrollment:*

>   If you apply within 30 days after the date on which you meet the plan's eligibility requirements (including any applicable waiting periods), your coverage will begin as of the date thereafter specified by your group (generally the first day of the month after you have met the eligibility requirements and applied). If you are a new employee, coverage will not begin earlier than the first day on which you report to active duty. An employee who enrolls under this paragraph is called a "regular enrollee."

*Late Enrollment:*

> You may also enroll as a "late enrollee" during your group's annual open enrollment period. Your coverage will begin on the date specified by your group following your enrollment. A late enrollee is any member who doesn't enroll during the regular enrollment period described above or during a special enrollment period. Late enrollees are subject to longer pre-existing condition exclusion periods than regular and special enrollees. See the discussion below on pre-existing condition exclusions for more information about this.

*Special Enrollment Period for Individuals Losing Other Coverage:*

> An employee or dependent (1) who doesn't enroll during the first 30 days of eligibility because the employee or dependent has other coverage, (2) whose other coverage was either COBRA coverage that was exhausted or coverage by other health plans which ended due to "loss of eligibility" (as described below) or failure of the employer to pay toward that coverage, and (3) who requests enrollment within 30 days of the exhaustion or termination of coverage, may enroll in the plan. Coverage will be effective no later than the first day of the first calendar month beginning after the date the plan receives the request for special enrollment. A member who enrolls under this paragraph is called a "special enrollee."

> Loss of eligibility with respect to a special enrollment period includes loss of coverage as a result of legal separation, divorce, cessation of dependent status, death, termination of employment, reduction in the number of hours of employment, and any loss of eligibility that is measured by reference to any of these events, but does not include loss of coverage due to failure to timely pay premiums or termination of coverage for cause (for example, making a fraudulent claim or intentional misrepresentation of a material fact). Loss of eligibility with respect to a special enrollment period also includes a situation where an individual incurs a claim that would meet or exceed a lifetime limit on all plan benefits.

*Special Enrollment Period for Newly Acquired Dependents:*

> If you have a new dependent as a result of marriage, birth, placement for adoption, or adoption, you may enroll yourself and/or your spouse and your new dependent as special enrollees provided that you request enrollment within 30 days of the event. The effective date of coverage will be the date of birth, placement for adoption, or adoption. In the case of a dependent acquired through marriage, the effective date will be no later than the first day of the first calendar month beginning after the date the plan receives the request for special enrollment. A member who enrolls under this paragraph is also called a "special enrollee."

If we accept your application, you will receive an identification card. If we decline your application, all the law requires us to do is refund any fees paid.

## Will I be Subject to a Pre-Existing Condition Exclusion Period?

Yes, unless you have enough prior creditable coverage to completely eliminate the plan's pre-existing condition waiting period.

*In General:*

> As a general rule, for the first 9 months (270 days) after your "enrollment date" (as defined below), there are no benefits for pre-existing conditions. If you are a late enrollee, there are no benefits for the first 18 months (546 days) after your enrollment date for pre-existing conditions. If you are a regular enrollee, your enrollment date is the earlier of the first day of any waiting period or the first day on which you become covered. If you are a special or late enrollee, your enrollment date is the first day on which you become covered.

> The 9 or 18-month pre-existing condition exclusion periods are reduced by any credit you receive for prior creditable coverage (as described below).

9

A pre-existing condition is any condition, no matter how caused, for which you received medical advice, a diagnosis, or care, or for which treatment was recommended or received during the six-month period preceding your enrollment date. Even if your condition is not diagnosed until after your enrollment date, we will treat your condition as pre-existing if treatment was recommended or received during the six-month period preceding your enrollment date for symptoms that are consistent with the presence of your condition.

Pre-existing conditions do not apply to newborns enrolled within 30 days of birth or children under age 18 who are enrolled within 30 days of the date of adoption or placement for adoption. Pre-existing conditions do not apply to pregnancy.

*Credit for Prior Creditable Coverage:*

If you were covered by another plan before becoming covered by this plan, we'll credit the time toward the 9 (270 days) or 18 (546 days) month pre-existing conditions exclusion period, if:

a. there is no greater than a 63-day break in coverage, and

b. the last coverage was "creditable coverage," i.e., under an individual or group health plan including COBRA, Medicare, Medicaid, U.S. Military, TRICARE, Federal Employee Program, Indian Health Service, Peace Corps Service, a State risk pool or a plan established or maintained by a State, U.S. Government, foreign country or any political subdivision of a State, U.S. Government or foreign country.

If necessary, we will assist in obtaining a certificate from any prior employer, insurer, or Health Maintenance Organization (HMO).

## Will The Plan Cover A Child If Required To Do So By Court Order?

If the employer (the plan administrator) receives an order from a court or administrative agency directing the plan to cover a child, the employer will determine whether the order is a Qualified Medical Child Support Order (QMCSO). A QMCSO is a qualified order from a court or administrative agency directing the plan to cover the employee's child regardless of whether the employee has enrolled the child for coverage. The employer has adopted procedures for determining whether such an order is a QMCSO. You have a right to obtain a copy of those procedures free of charge by contacting the employer at the address shown near the end of this summary.

The plan will cover an employee's child if required to do so by a QMCSO. If the employer determines that an order is a QMCSO, Blue Cross will enroll the child for coverage effective as of a date specified by the employer, but not earlier than the later of the following:

1. If we receive a copy of the order within 30 days of the date on which it was entered, along with instructions from the employer to enroll the child pursuant to the terms of the order, coverage will begin as of the date on which the order was entered.

2. If we receive a copy of the order later than 30 days after the date on which it was entered, along with instructions from the employer to enroll the child pursuant to the terms of the order, coverage will begin as of the date on which we receive the order. We will not provide retroactive coverage in this instance.

Coverage may continue for the period specified in the order up to the time the child ceases to satisfy the definition of an eligible dependent. If the employee is required to pay extra to cover the child, the employer may increase the employee's payroll deductions. During the period the child is covered under the plan as a result of a QMCSO, all plan provisions and limits remain in effect with respect to the child's coverage except as otherwise required by federal law. For example, a child covered by a QMCSO may be subject to a pre-existing condition exclusion.

10

While the QMCSO is in effect Blue Cross will make benefit payments – other than payments to providers – to the parent or legal guardian who has been awarded custody of the child. Blue Cross will also provide sufficient information and forms to the child's custodial parent or legal guardian to allow the child to enroll in the plan. Blue Cross will also send claims reports directly to the child's custodial parent or legal guardian.

## If I Work After Age 65 or Become Eligible for Medicare, Am I Still Covered?

In determining the number of employees of an employer for purposes of the following provisions, certain related corporations (parent/subsidiary and brother/sister corporations) must be treated as one employer. Special rules may also apply if the employer participates in an association plan.

### Employers With 20 or More Employees

If your employer employs 20 or more employees and if you continue to be actively employed when you are age 65 or older, you and your spouse will continue to be covered for the same benefits available to employees under age 65. In this case, your group benefits plan will pay all eligible expenses first. If you are enrolled in Medicare, Medicare will pay for Medicare eligible expenses, if any, not paid by the group benefits plan.

If both you and your spouse are over age 65, you may elect to disenroll completely from the plan and purchase a Medicare Supplement contract. This means that you will have no benefits under the plan. In addition, the employer is prohibited by law from purchasing your Medicare Supplement contract for you or reimbursing you for any portion of the cost of the contract.

If you are age 65 or older, considering retirement, and think you may need to buy COBRA coverage after you retire, you should read the section below dealing with COBRA coverage - particularly the discussion under the heading "I Am Age 65 or Older and about to Retire. Can I Have Medicare and COBRA Coverage at the Same Time?"

### Other Medicare Rules

Disabled Individuals: If you or your dependent is eligible for Medicare due to disability and is also covered under the plan by virtue of your current employment status with the employer, Medicare will be considered the primary payer (and the plan will be secondary) if your employer employs fewer than 100 employees. If your employer employs 100 or more employees, the plan will be primary and Medicare will be secondary.

End-Stage Renal Disease: If you are eligible for Medicare as a result of End-Stage Renal Disease (permanent kidney failure), the plan will generally be primary and Medicare will be secondary for the first 30 months of your Medicare eligibility (regardless of the size of the employer). Thereafter, Medicare will be primary and the plan will be secondary.

If you have any questions about coordination of your coverage with Medicare, please contact your group administrator for further information.

## When Will Coverage Terminate?

Plan coverage ends as a result of the first to occur of the following (generally, coverage will continue to the end of the month in which the event occurs):

1.  the date on which the employee fails to satisfy the conditions for eligibility to participate in the plan, such as termination of employment or reduction in hours (except during vacation or as otherwise provided in the leave of absence rules below);

2.  for spouses, the date of divorce or other termination of marriage;

3.  for children, the date a child ceases to be a dependent;

4.  for the subscriber and his or her dependents, the date of the subscriber's death;

5.  your group fails to pay us the amount due within 30 days after the day due;

6.  upon discovery of fraud or intentional misrepresentation of a material fact by you or your group;

7.  at any time your group fails to comply with the contribution or participation rules in the enrollment agreement;

8.  when none of your group's members still live, reside or work in Alabama; or,

9.  on 30 days advance written notice from your group to us.

In all cases the termination occurs automatically and without notice. All the dates of termination assume that payment for coverage for you and all other employees in the proper amount has been made to that date. If it has not, termination will occur back to the date for which coverage was last paid.

## Will I Lose My Coverage During a Leave of Absence?

If your employer is covered by the Family and Medical Leave Act of 1993 (FMLA), you may retain your coverage under the plan during an FMLA leave, provided that you continue to pay your premiums. In general, the FMLA applies to employers who employ 50 or more employees. You should contact your employer to determine whether leave qualifies as FMLA leave.

You may also continue your coverage under the plan for up to 30 days during an employer-approved leave of absence, including sick leave. Contact your employer to determine whether such leaves of absence are offered. If your leave of absence also qualifies as FMLA leave, your 30-day leave time runs concurrently with your FMLA leave. This means that you will not be permitted to continue coverage during your 30-day leave time in addition to your FMLA leave.

If you are on military leave covered by the Uniformed Services Employment and Reemployment Rights Act of 1994, you should see your employer for information about your rights to continue coverage under the plan.

# COBRA COVERAGE

## What Is COBRA; Does It Apply to Me?

COBRA is the Consolidated Omnibus Budget Reconciliation Act of 1985 (Public Law 99-272, Title X). If COBRA applies, you may be able to temporarily continue coverage under the plan beyond the point at which coverage would otherwise end because of a life event known as a "qualifying event." After a qualifying event, COBRA coverage may be offered to each person who is a "qualified beneficiary." You, your spouse, and your dependent children could become qualified beneficiaries if coverage under the plan is lost because of a qualifying event.

Not all group health plans are covered by COBRA. As a general rule, COBRA applies to all employer-sponsored group health plans (other than church plans) if the employer employed 20 or more full or part-time employees on at least 50% of its typical business days during the preceding calendar year. In determining the number of employees of an employer for purposes of COBRA, certain related corporations (parent/subsidiary and brother/sister corporations) must be treated as one employer. Special rules may also apply if the employer participates in an association plan.

You must contact your plan administrator (normally your employer) to determine whether this plan is covered by COBRA. Blue Cross is not your plan administrator.

COBRA coverage can be particularly important for several reasons. First, it will allow you to continue group health care coverage beyond the point at which you would ordinarily lose it. Second, it can prevent you from incurring a break in coverage (persons with 63-day breaks in creditable coverage may be required to satisfy pre-existing condition exclusion periods if they obtain health coverage elsewhere). And third, it could allow you to qualify for coverage under the Alabama Health Insurance Program (AHIP). See the discussion below under "What Happens When COBRA Coverage Ends?" for more information about this. You do not have to demonstrate evidence of insurability in order to qualify for COBRA coverage.

You will have to pay for COBRA coverage. Your cost will equal the full cost of the coverage plus a two percent administrative fee. Your cost may change over time, as the cost of benefits under the plan changes. If the employer stops providing health care through Blue Cross, Blue Cross will stop administering your COBRA benefits. You should contact your employer to determine if you have further rights under COBRA.

## What Are My COBRA Rights if I Am a Covered Employee?

If you are a covered employee, you will become a qualified beneficiary if you lose coverage under the plan because either one of the following qualifying events happens:

- your hours of employment are reduced, or

- your employment ends for any reason other than your gross misconduct.

COBRA coverage will continue for up to a total of 18 months from the date of your termination of employment or reduction in hours, assuming you pay your premiums on time. If, apart from COBRA, your employer continues to provide coverage to you after your termination of employment or reduction in hours (regardless of whether such extended coverage is permitted under the terms of the plan), the extended coverage you receive will ordinarily reduce the time period over which you may buy COBRA benefits.

If you are on a leave of absence covered by the Family and Medical Leave Act of 1993 (FMLA), and you do not return to work, you will be given the opportunity to buy COBRA coverage. The period of your COBRA coverage will begin when you fail to return to work following the expiration of your FMLA leave or you inform your employer that you do not intend to return to work, whichever occurs first.

You are not entitled to buy COBRA coverage if you are employed as a nonresident alien who received no U.S. source income, nor may your family members buy COBRA.

If the plan provides health coverage for retired employees, sometimes filing a proceeding in bankruptcy under title 11 of the United States Code can be a qualifying event. If a proceeding in bankruptcy is filed with respect to the employer, and the bankruptcy results in the loss of coverage of any covered retired employee, the retired employee will become a qualified beneficiary with respect to the bankruptcy. The retired employee's spouse, surviving spouse, and dependent children will also become qualified beneficiaries if bankruptcy results in the loss of their coverage.

## What Are My COBRA Rights if I Am a Covered Spouse?

If you are covered under the plan as a spouse of a covered employee, you will become a qualified beneficiary if you would otherwise lose coverage under the plan as a result of any of the following events:

- your spouse dies;

- your spouse's hours of employment are reduced;

- your spouse's employment ends for any reason other than his or her gross misconduct;

- your spouse becomes enrolled in Medicare; or

- you become divorced from your spouse.

If your spouse cancels your coverage in anticipation of divorce and a divorce later occurs, your divorce may be a qualifying event even though you actually lost coverage under the plan earlier. If you timely notify the plan administrator of your divorce and can establish that your spouse canceled your coverage in anticipation of divorce, COBRA coverage may be available to you beginning on the date of your divorce (but not for the period between the date your coverage ended and the date of the divorce). See the discussion below under "Do I Have to Give Notice of any Qualifying Events?" and "What are the Notice Procedures I Have to Use to Notify the Plan of Certain Events?" for more information about your responsibility to give timely notice of your divorce and the procedures for doing so.

## What Are My COBRA Rights if I Am a Dependent Child?

If you are covered under the plan as a dependent child of a covered employee, you will become a qualified beneficiary if you would otherwise lose coverage under the plan as a result of any of the following events:

- the parent-employee dies;

- the parent-employee's hours of employment are reduced;

- the parent-employee's employment ends for any reason other than his or her gross misconduct;

- the parent-employee becomes enrolled in Medicare;

- your parents become divorced; or

- you lose dependent child status under the plan.

If you are a child of the covered employee or former employee and you are receiving benefits under the plan pursuant to a qualified medical child support order, you are entitled to the same rights under COBRA as a dependent child of the covered employee.

## How Long will COBRA Last if I Am a Covered Spouse or Dependent Child?

If you are a covered spouse or dependent child, the period of COBRA coverage will generally last up to a total of 18 months in the case of a termination of employment or reduction in hours and up to a total of 36 months in the case of other qualifying events, provided that premiums are paid on time.

If, however, the covered employee became enrolled in Medicare before the end of his or her employment or reduction in hours, COBRA coverage for the covered spouse and dependent children will continue for up to 36 months from the date of Medicare enrollment or 18 months from the date of termination of employment or reduction in hours, whichever period ends last. For example, if a covered employee becomes enrolled in Medicare 8 months before the date on which his employment terminates, COBRA coverage for his spouse and children can last up to 36 months after the date of Medicare enrollment, which is equal to 28 months after the date of the qualifying event that is termination of employment (36 months minus 8 months).

## Do I Have to Give Notice of any Qualifying Events?

Yes.

You will be offered COBRA coverage only after the plan administrator has been notified that a qualifying event has occurred. When the qualifying event is a divorce or a child losing dependent status under the plan, you must timely notify the plan administrator of the qualifying event. You must provide this notice within 60 days of the event or within 60 days of the date on which coverage would be lost because of the event, whichever is later. See the discussion below under "What are the Notice Procedures I Have to Use to Notify the Plan of Certain Events?" for more information about the notice procedures you must use to give this notice. *If you do not follow these notice procedures or if you do not give the plan administrator notice of your divorce or a child losing dependent status under the plan within the 60-day notice period, you will not be permitted to buy COBRA coverage as a result of divorce or a child losing dependent status.*

When the qualifying event is the end of employment or reduction of hours of employment, death of the employee, commencement of a proceeding in bankruptcy with respect to the employer if the plan provides retiree health coverage, or the employee's becoming enrolled in Medicare, the employer must notify the plan administrator of the qualifying event.

## Can COBRA Coverage be Extended if I Am Disabled?

Yes. In certain circumstances you can take advantage of a special disability extension.

If you or a covered member of your family is or becomes disabled under Title II (OASDI) or Title XVI (SSI) of the Social Security Act and you timely notify the plan administrator, the 18-month period of COBRA coverage for the disabled person may be extended to up to 11 additional months (for a total of up to 29 months) or the date the disabled person becomes covered by Medicare, whichever occurs sooner. This 29-month period also applies to any non-disabled family members who are receiving COBRA coverage, regardless of whether the disabled individual elects the 29-month period for him or herself. The 29-month period will run from the date of the termination of employment or reduction in hours. For this disability extension to apply, the disability must have started at some time before the 60th day of COBRA coverage and must last at least until the end of the 18-month period of COBRA coverage.

The cost for COBRA coverage after the 18th month will be 150% of the full cost of coverage under the plan, assuming that the disabled person elects to be covered under the disability extension. If the only persons who elect the disability extension are non-disabled family members, the cost of coverage will remain at 102% of the full cost of coverage.

For spouses and children, the disability extension may be further extended to 36 months if another qualifying event (death, divorce, enrollment in Medicare, or loss of dependent status) occurs during the 29-month period. See the following discussion under "Can COBRA Coverage be Extended if I have a Second Qualifying Event?" for more information about this.

## Do I Have to Give Notice of Social Security's Disability Determination?

Yes.

For this disability extension of COBRA coverage to apply, you must give the plan administrator timely notice of Social Security's disability determination before the end of the 18-month period of COBRA coverage and within 60 days after the later of (i) the date of the initial qualifying event, (ii) the date on which coverage would be lost because of the initial qualifying event,or (iii) the date of Social Security's determination. You must also notify the plan administrator within 30 days of any revocation of Social Security disability benefits. See the discussion below under "What are the Notice Procedures I Have to Use to Notify the Plan of Certain Events?" for more information about the notice procedures you must use to give this notice. *If you do not follow these notice procedures or if you do not give the plan administrator notice of Social Security's disability determination within the required notice period, you will not be entitled to this disability extension of COBRA coverage.*

## Can COBRA Coverage be Extended if I have a Second Qualifying Event?

Yes. In certain circumstances spouses and children can take advantage of a special second qualifying event extension.

For spouses and children receiving COBRA coverage, the 18-month period may be extended to 36 months if another qualifying event occurs during the 18-month period, if you give the plan administrator timely notice of the second qualifying event. The 36-month period will run from the date of the termination of employment or reduction in hours.

This extension is available to spouses and children receiving COBRA coverage if the covered employee or former employee dies, becomes enrolled in Medicare, or gets divorced, or if the child stops being eligible under the plan as a dependent child, *but only if the event would have caused the spouse or child to lose coverage under the plan had the first qualifying event not occurred.* For example, if a covered employee is terminated from employment, elects family coverage under COBRA, and then later enrolls in Medicare, this second event will rarely be a second qualifying event that would entitle the spouse and children to extended COBRA coverage. This is so because, for almost all plans that are subject to COBRA, this event would not cause the spouse or dependent children to lose coverage under the plan if the covered employee had not been terminated from employment.

## Do I Have to Give Notice of Second Qualifying Events?

Yes.

For this 18-month extension to apply, you must give the plan administrator timely notice of the second qualifying event within 60 days after the event occurs or within 60 days after the date on which coverage would be lost because of the event, whichever is later. See the discussion below under "What are the Notice Procedures I Have to Use to Notify the Plan of Certain Events?" for more information about the notice procedures you must use to give this notice. *If you do not follow these notice procedures or if you do not give the plan administrator notice of the second qualifying event within the required 60-day notice period, you will not be entitled to an extension of COBRA coverage as a result of the second qualifying event.*

16

## What are the Notice Procedures I Have to Use to Notify the Plan of Certain Events?

Any notices that you give must be in writing. Oral notice, including notice by telephone, is not acceptable. Your notice must be received by the plan administrator or its designee no later than the last day of the required 60-day notice period unless you mail it. If mailed, your notice must be postmarked no later than the last day of the required 60-day notice period.

For your notice of an initial qualifying event that is a divorce or a child losing dependent status under the plan and for your notice of a second qualifying event, you must mail or hand deliver your notice to the plan administrator at the address listed in the last paragraph entitled "Plan Administrator Contact Information" at the end of this booklet. Your notice must state (i) the name of the plan, (ii) the covered employee's name and address, (iii) the name(s) and address(es) of all qualified beneficiary(ies), (iv) the initial qualifying event and the date of the event, and (v), when applicable, the second qualifying event and the date of the event. If the initial or second qualifying event is a divorce, your notice must include a copy of the divorce decree. For your convenience, you may ask the plan administrator for a free copy of the Notice by Qualified Beneficiaries form that you may use to give your notice.

For your notice of Social Security's disability determination, if you are instructed to send your COBRA premiums to Blue Cross, you must mail or hand deliver your notice to Blue Cross at the following address: Blue Cross and Blue Shield of Alabama, Attention: Customer Accounts, 450 Riverchase Parkway East, Birmingham, Alabama 35298-0001 or fax your notice to Blue Cross at 205 220-6884 or (toll-free) 1 888 810-6884. If you do not send your COBRA premiums to Blue Cross, you must mail or hand deliver your notice to the plan administrator at the address listed in the last paragraph entitled "Plan Administrator Contact Information" at the end of this booklet. Your notice must state (i) the name of the plan, (ii) the covered employee's name and address, (iii) the name(s) and address(es) of all qualified beneficiary(ies), (iv) the qualifying event and the date of the event, (v) the name of the disabled person, (vi) the date the disabled person became disabled, and (vii) the date of Social Security's determination of disability. Your notice must also include a copy of Social Security's disability determination. For your convenience, you may ask the plan administrator for a free copy of the Notice by Qualified Beneficiaries form that you may use to give your notice.

## Can I Add Newly Acquired Dependents to My COBRA Coverage?

Yes, but only under circumstances permitted under the health plan. In addition, except as explained below, any new dependents that you add to your coverage will not have independent COBRA rights. That means, for example, that if you die, they will not be able to continue coverage.

If you are the covered employee and you acquire a child by birth or placement for adoption while you are receiving COBRA coverage, then your new child will have independent COBRA rights. This means that if you die, for example, your child may elect to continue receiving COBRA benefits for up to 36 months from the date on which your COBRA benefits began.

If your new child is disabled within the 60-day period beginning on the date of birth or placement of adoption, the child may elect coverage under the disability extension if you timely notify the plan administrator of Social Security's disability determination as explained above. The election should be made on the child's behalf by the child's legal guardian.

## I Am Age 65 or Older and about to Retire. Can I Have Medicare and COBRA Coverage at the Same Time?

Yes, but there are a few things that you need to consider.

Most importantly, you should consider whether it is more beneficial to purchase a Medicare supplemental contract instead of COBRA coverage. After you retire, your COBRA coverage will be secondary to Medicare with respect to services or supplies that are covered, or would be covered upon proper application, under Medicare. This means that, regardless of whether you have enrolled in Medicare, your COBRA coverage after retirement will not cover most of your hospital and medical expenses. Call the benefits coordinator at the employer for more information about this.

If you think you will need both Medicare and COBRA after your retirement, you should enroll in Medicare *on or before* the date on which you make your election to buy COBRA coverage. If you do this, COBRA coverage for your dependents will continue for a period of 18 months from the date of your retirement or 36 months from the date of your Medicare enrollment, whichever period ends last. Your COBRA coverage will continue for a period of 18 months from the date of your retirement. If you do not enroll in Medicare *on or before* the date on which you make your election to buy COBRA coverage, your COBRA benefits will end when your Medicare coverage begins. Your covered dependents will have the opportunity to continue their own COBRA coverage.

If you do not want both Medicare and COBRA for yourself, your covered family members will still have the option to buy COBRA when you retire.

## Are There Election Rules That Apply to COBRA?

Yes.

After the plan administrator receives timely notice that a qualifying event has occurred, the plan administrator is responsible for (i) notifying you that you have the option to buy COBRA, and (ii), sending you an application to buy COBRA coverage.

You have 60 days within which to elect to buy COBRA coverage. The 60-day period begins to run from the later of (i) the date you would lose coverage under the plan, or (ii), the date on which the employer notifies you that you have the option to buy COBRA coverage. Each qualified beneficiary has an independent right to elect COBRA coverage. You may elect COBRA coverage on behalf of your spouse, and parents may elect COBRA coverage on behalf of their children. An election to buy COBRA coverage will be considered made on the date sent back to the employer.

Once the employer has notified us that your coverage under the plan has ceased, we will retroactively terminate your coverage and rescind payment of all claims incurred after the date coverage ceased. If you elect to buy COBRA during the 60-day election period, and if your premiums are paid on time, we will retroactively reinstate your coverage and process claims incurred during the 60-day election period.

Because there may be a lag between the time your coverage under the plan ends and the time we learn of your loss of coverage, it is possible that we may pay claims incurred during the 60-day election period. If this happens, you should not assume that you have coverage under the plan. The only way your coverage will continue is if you elect to buy COBRA and pay your premiums on time.

## Can My COBRA Coverage Terminate Early?

Yes.

Your COBRA coverage will terminate early if any of the following events occurs:

- the employer no longer provides group health coverage to any of its employees;

- you do not pay the premium for your continuation coverage on time;

- after electing COBRA coverage, you become covered under another group health plan that does not contain any exclusion or limitation on any pre-existing condition you may have or you have sufficient creditable coverage to preclude application of the new plan's pre-existing condition exclusion period to you;

- after electing COBRA coverage, you become enrolled in Medicare; or,

- you are covered under the additional 11-month disability extension and there has been a final determination that the disabled person is no longer disabled for Social Security purposes.

In addition, COBRA coverage can be terminated if otherwise permitted under the terms of the plan. For example, if you submit fraudulent claims, your coverage will terminate.

If you are buying COBRA coverage and you become covered under a group health plan that contains a pre-existing condition limitation or exclusion that *does* apply to you (for example, you do not have enough creditable coverage to preclude application of the new plan's pre-existing condition exclusion period to you), you should discuss the situation with the sponsor of the new plan (usually the new employer) to determine whether it makes sense nonetheless for you to enroll in the new plan while continuing to pay for COBRA coverage at the same time. Since some plans limit the circumstances under which employees and their families may enroll, it is best to consult with the new employer concerning the interaction of COBRA and the new employer's group health coverage.

## Can COBRA Benefits Change?

Yes, as and when benefits under the group health plan change.

By law, COBRA benefits are required to be the same as those made available to similarly situated active employees. If the employer changes the group coverage, coverage will also change for you.

## When Must COBRA Premiums be Paid?

Your first COBRA premium payment must be made no later than 45 days after you elect COBRA coverage. That payment must include all premiums owed from the date on which COBRA coverage began. This means that your first premium could be larger than the monthly premium that you will be required to pay going forward. You are responsible for making sure the amount of your first payment is correct. You may contact the plan administrator to confirm the correct amount of your first payment.

After you make your first payment for COBRA coverage, you must make periodic payments for each subsequent coverage period. Each of these periodic payments is due on the first day of the month for that coverage period. There is a grace period of 30 days for all premium payments after the first payment. However, if you pay a periodic payment later than the first day of the coverage period to which it applies, but before the end of the grace period for the coverage period, any

19

claim you submit for benefits will be suspended as of the first day of the coverage period and then processed by the plan only when the periodic payment is received. If you fail to make a periodic payment before the end of the grace period for that coverage period, you will lose all rights to COBRA coverage under the plan.

Payment of your COBRA premiums is deemed made on the day sent.

The Trade Act of 2002 created a new tax credit for certain individuals who become eligible for trade adjustment assistance and for certain retired employees who are receiving pension payments from the Pension Benefit Guaranty Corporation (PBGC) (eligible individuals). Under the new tax provisions, eligible individuals can either take a tax credit or get advance payment of 65% of premiums paid for qualified health insurance, including COBRA coverage. If you have questions about these new tax provisions, you may call the Health Coverage Tax Credit Customer Contact Center toll-free at 1 866 628-4282. TTD/TTY callers may call toll-free at 1 866 626-4282. More information about the Trade Act is also available at **www.doleta.gov/tradeact/2002act_index.asp.**

## What Happens When COBRA Coverage Ends?

If you exhaust your COBRA coverage you may buy a conversion health contract from Blue Cross. Please contact Blue Cross to determine whether a conversion contract is available. Conversion contracts have more limited coverage than COBRA coverage.

You may also qualify for coverage under state law. In Alabama, you can continue coverage through the Alabama Health Insurance Plan (AHIP). You can reach AHIP by calling the State Employees' Insurance Board in Montgomery, Alabama. In other states, you should call the state insurance department. If you elect to buy a conversion contract instead of enrolling in AHIP, you will not be able to enroll at a later date in AHIP.

By contrast, if COBRA coverage ends because you stop paying for it, then you will not have any further coverage under the group health plan and you will not be eligible to buy conversion coverage (if available) and you may not qualify for continued coverage under any applicable state law program. For example, in Alabama, you would not qualify for continued coverage under AHIP.

If you have any further questions about COBRA or **if you change marital status, or you or your spouse or child changes address, please contact your plan administrator.** Additional information about COBRA can also be found at the web site of the Employee Benefits Security Administration of the United States Department of Labor.

## CERTIFICATES OF CREDITABLE COVERAGE

The Health Insurance Portability and Accountability Act of 1996 (HIPAA) creates a concept known as "creditable coverage." Your coverage under this plan is considered creditable coverage. If you have sufficient creditable coverage under this plan and you do not incur a break in coverage (63 continuous days of no creditable coverage), you may be able to reduce or eliminate the application of a pre-existing illness exclusion in another health plan. See the section of this summary dealing with pre-existing condition periods for an explanation of how this works.

At any time up to 24 months after the date on which your coverage ceases under the plan, you may request a copy of a certificate of creditable coverage. In order to request this certificate, you or someone on your behalf must call or write Customer Service.

# BENEFIT CONDITIONS

To qualify as plan benefits, medical services and supplies must meet the following:

1.  They must be furnished after your coverage becomes effective;

2.  Services or supplies for any pre-existing condition must be furnished after the 9-month (270 days) or 18-month (546 days) pre-existing condition exclusion period;

3.  We must determine before, during or after services and supplies are furnished that they are medically necessary;

4.  PPO benefits must be furnished while you are covered by this plan and the provider must be a PPO Provider when the services or supplies are furnished to you;

5.  Separate and apart from the requirement in paragraph 4. above, services and supplies must be furnished by a provider (whether a Preferred Provider or not) who is recognized by us as an approved provider for the type of service or supply being furnished. For example, we reserve the right not to pay for some or all services or supplies furnished by certain persons who are not Medical Doctors (M.D.s), even if the services or supplies are within the scope of the provider's license. Call Customer Service if you have any question whether your provider is recognized by us as an approved provider for the services or supplies you plan on receiving;

6.  Services and supplies must be furnished when the plan and your coverage both are in effect and fully paid for. No benefits will be provided for services you receive after the plan or your coverage ends, even if they are for a condition which began before the plan or your coverage ends.

# HEALTH BENEFITS

All benefits are subject to all deductibles, conditions, limitations and exclusions of the plan.

**BEFORE YOUR HOSPITAL ADMISSION--CAUTION:** One of several requirements for hospital benefits is that we certify the medical necessity of your hospital stay in advance, except for emergencies and when you are admitted to a Concurrent Utilization Review Hospital by a Preferred Medical Doctor. Emergency admissions require notice to us within 48 hours and must also be certified by us as both medically necessary and as an emergency admission. You may appeal these decisions. **Failure to obtain our certificate of medical necessity will result in no benefits being paid for your hospital stay or the admitting physician.** Just because we certify a hospital admission as medically necessary does NOT mean we have decided to pay benefits for it. For example, the admission may be for a pre-existing condition or any other excluded condition.

## Inpatient Hospital Benefits in a PPO or Participating Hospital (in Alabama) or a PPO Hospital (Outside of Alabama)

1.  Bed and board and general nursing care in a semiprivate room; **or**

2.  Use of special hospital units such as intensive care or burn care and the hospital nurses who staff them; **and**

3.  Use of operating, delivery, recovery, and treatment rooms and the equipment in them;

4.  Administration of anesthetics by hospital employees and all necessary equipment and supplies;

8.  Colorectal Cancer Screening for ages 50 and over including:

    ▪  fecal occult blood test (FOBT) once per calendar year;

    ▪  flexible sigmoidoscopy once every three calendar years;

    ▪  double-contrast barium enema once every five calendar years;

    ▪  colonoscopy once every 10 calendar years;

    See Colorectal Cancer Screenings (later in this booklet) for additional information.

## Prescription Drug Point-of-Sale Benefits

1.  Benefits are only for prescriptions purchased from Participating Pharmacies. In some cases, drugs may require prior authorization. Your Participating Pharmacist will advise if this is a requirement. Prescriptions purchased from Non-Participating Pharmacies are not covered. Participating Pharmacies give you a number which you must give us when you file your drug claim. We call the number a "Claim Authorization Number."

2.  To be eligible for benefits, drugs must be legend drugs prescribed by a physician and dispensed by a licensed pharmacist. Legend drugs are medicines which must by law be labeled, "Caution: Federal Law prohibits dispensing without a prescription."

3.  Drugs can be dispensed in a maximum of a 90-day supply for each drug or refill. Refills are allowed only after 50% of the previous prescription has been used, e.g., 15 days into a 30-day supply.

4.  Insulin may be dispensed up to a 90-day supply. Syringes and needles for insulin doses are also covered up to a 90-day supply.

## Baby Yourself Program

If you or your spouse is pregnant, Baby Yourself offers individual care by a registered nurse. Please call our nurses at 1 800 222-4379 (or 733-7065 in Birmingham) as soon as you find out you are pregnant. Begin care for you and your baby as early as possible and continue throughout your pregnancy. Your baby has the best chance for a healthy start by early, thorough care while you are pregnant. If you fall into one of the following risk categories, please tell your doctor and your Baby Yourself nurse:

▪  ages 35 or older

▪  high blood pressure

▪  diabetes

▪  history of previous premature births

▪  multiple births (twins, triplets, etc.)

## Other Covered Services

1. Semiprivate room and board, general nursing care, and all necessary hospital services and supplies when your inpatient hospital benefits are all used.

2. $5 a day for hospital room and board for a private hospital room.

3. Outpatient hospital services.

4. Anesthesia for surgery or obstetrical care when given by other than the surgeon, obstetrician or hospital employee.

5. Physical therapy and hydrotherapy given by a licensed physical therapist.

6. Radiation therapy and chemotherapy.

7. Lab and x-ray exams and other diagnostic tests such as allergy testing.

8. Drugs that require a written prescription by a physician and must be filled by a licensed pharmacist. In the state of Alabama, drugs must be filled by a Participating Pharmacist in order to receive coverage.

9. Artificial arms and other prosthetics; leg braces and other orthopedic devices.

10. Medical supplies such as oxygen, crutches, casts, catheters, colostomy bags and supplies, and splints.

11. Treatment of natural teeth injured by a force outside your mouth or body, if service is received within 90 days of the injury.

12. Professional ambulance service to the closest hospital that could treat the condition.

13. The less expensive for rental or purchase of durable medical equipment such as wheelchairs and hospital beds.

14. Hemodialysis services of a Participating Renal Dialysis Facility.

15. Treatment of mental and nervous disorders including alcoholism and drug addiction.

16. Physician's covered services. Surgery includes preoperative and postoperative care, reduction of fractures and endoscopic procedures, maternity deliveries and heart catheterization.

17. Occupational therapy performed by a licensed occupational therapist.

18. Phase I therapy and exams for TMJ disorders according to the guides of the American Academy of Craniomandibular Disorders.

19. Chiropractic services.

20. Speech therapy when performed by a licensed speech therapist.

## Individual Case Management

Unfortunately, some people suffer from catastrophic, long-term, and chronic illness or injury. If you have a catastrophic, long-term or chronic illness or injury, a Blue Cross Registered Nurse may assist you in accessing the most appropriate health care for your condition. The nurse case manager will work with you, your physician, and other health care professionals to design a treatment plan to best meet your health care needs. In order to implement the plan, you, your physician, and Blue Cross must agree to the terms of the plan. The program is voluntary to you

and your physician. Under no circumstances are you required to work with a Blue Cross case management nurse. Benefits provided to you through Individual Case Management are subject to your benefit contract maximums. If you think that you may benefit from Individual Case Management, please call the Health Management division at (205)733-7067 or 1 800 821-7231.

If you suffer from certain long-term, chronic, diseases or conditions you may qualify to participate in the Care Management Program. Care Management is designed for individuals whose long-term medical needs require disciplined compliance with a variety of medical and lifestyle requirements. If the manager of the Care Management Program determines from your claims data that you are a good candidate for Care Management, the manager will contact you and ask if you would like to participate. Participation in the program is completely voluntary. If you would like to obtain more information about the program, call Customer Service at the number on the back cover.

## Organ, Tissue and Bone Marrow/Cell Transplants

The organs and tissue for which there are benefits are: (1) heart; (2) liver; (3) lungs; (4) pancreas; (5) kidney; (6) heart-valve; (7) skin; (8) cornea; and (9) small bowel. Bone marrow transplants, which include stem cells and marrow to restore or make stronger the bone marrow function, are also included. The transplant must be performed in a hospital or other facility on our list of approved facilities for that type of transplant and it must have our advance written approval. When we approve a facility for transplant services it is limited to the specific types of transplants stated. Donor organ costs are limited to search, removal, storage and the transporting the organ and removal team.

There are no transplant benefits for: (1) any artificial or mechanical devices; (2) organ or bone marrow transplants from animals; (3) donor costs available through other group coverage; (4) if any government funding is provided; (5) the recipient if not covered by this plan; (6) recipient or donor room, food, or transportation costs we did not approve in writing; (7) a condition or disease for which a transplant is considered investigational; (8) transplants performed in a facility not on our approved list for that type or for which we have not given written approval in advance.

## Mastectomy and Mammograms

Women's Health and Cancer Rights Act Information

> A member who is receiving benefits in connection with a mastectomy will also receive coverage for reconstruction of the breast on which a mastectomy was performed and reconstruction of the other breast to produce a symmetrical appearance; prostheses; and treatment of physical complications at all stages of the mastectomy, including lymphedema.

> Treatment decisions are made by the attending physician and patient. Benefits for this treatment will be subject to the same calendar year deductibles and coinsurance provisions that apply for other medical and surgical benefits.

Benefit for Mammograms

> Benefits for mammograms vary depending upon the reason the procedure is performed and the way in which the provider files the claim:

> - If the mammogram is performed in connection with the diagnosis or treatment of a medical condition, and if the provider properly files the claim with this information, we will process the claim as a diagnostic procedure according to the benefit provisions of the plan dealing with diagnostic x-rays.

> - If you are at high risk of developing breast cancer or you have a family history of breast cancer – within the meaning of our medical guidelines – and if the provider properly files

the claim with this information, we will process the claim as a diagnostic procedure according to the benefit provisions of the plan dealing with diagnostic x-rays.

- In all other cases the claim will be subject to the routine mammogram benefit provisions and limits described elsewhere in this booklet.

## Colorectal Cancer Screenings

Benefits for colorectal cancer screenings vary depending upon the reason the procedure is performed and the way in which the provider files the claim:

- If the colorectal cancer screening is performed in connection with the diagnosis or treatment of a medical condition, and if the provider properly files the claim with this information, we will process the claim as a diagnostic or surgical procedure according to the benefit provisions of the plan dealing with diagnostic or surgical procedures.

- If you have family history of colon cancer – within the meaning of our medical guidelines – and if the provider properly files the claim with this information, we will process the claim as a diagnostic or surgical procedure according to the benefit provisions of the plan dealing with diagnostic or surgical procedures.

- In all other cases the claim will be subject to the routine colorectal cancer screening benefit provisions with the age and frequency limitations described elsewhere in this booklet.

# COORDINATION OF BENEFITS (COB)

COB is a provision designed to help manage the cost of health care by avoiding duplication of benefits when a person is covered by two or more benefit plans. COB provisions determine which plan is primary and which is secondary.

A primary plan is one whose benefits for a person's health care coverage must be determined first without taking the existence of any other plan into consideration.

A secondary plan is one which takes into consideration the benefits of the primary plan before determining benefits available under its plan.

Which plan is primary is decided by the first rule below that applies (note, however, that if the other plan is Medicare the order of benefit determination is determined by the applicable Medicare secondary payer laws):

1. If the other plan has no COB provision, it is primary.

2. Employee/Dependent: The plan covering a patient as an employee, member, or subscriber (that is other than as a dependent) is primary over the plan covering the patient as a dependent. In some cases, depending upon the size of the employer, Medicare secondary payer rules may require us to reverse this order of payment. This can occur when the patient is covered as an inactive or retired employee, is also covered as a dependent of an active employee, and is also covered by Medicare. In this case, the order of benefit determination will be as follows: first, the plan covering the patient as a dependent; second, Medicare; and third, the plan covering the patient as an inactive or retired employee.

3. Dependent Child/Parents Not Separated or Divorced: If both plans cover the patient as a dependent child, the plan of the parent whose birthday falls earlier in the year will be primary. If the parents have the same birthday, the plan covering the patient longer is primary. If the other plan does not use this "birthday rule" the other plan's rule will be used.

27

4.   Dependent Child/Separated or Divorced Parents: If two or more plans cover the patient as a dependent child of divorced or separated parents, benefits are determined in this order:

    a.   first, the plan of the parent with custody;

    b.   second, the plan of the spouse of the parent with custody;

    c.   third, the plan of the parent without custody; and

    d.   last, the plan of the spouse of the parent without custody.

If the divorced or separated parents have joint legal custody, benefits are determined as if the parents are not separated or divorced (see paragraph 3 above).

If there is a court order that specifically states that one parent must provide for the child's health expenses or provide health insurance coverage for the child, benefits are determined in this order:

    a.   first, the plan of the court-ordered parent;

    b.   second, the plan of the spouse of the court-ordered parent;

    c.   third, the plan of the non-court-ordered parent; and,

    d.   last, the plan of the spouse of the non-court-ordered parent.

5.   Active/Inactive Employee: When a patient is covered under one plan as an active employee and under another plan as a retired or inactive employee (e.g., a former employee receiving COBRA benefits), the plan which covers the patient as an active employee is primary over a plan which covers the patient as a laid-off or retired employee. This applies to the employee's dependents as well unless the dependents have other coverage due to their own current or former employment status.

6.   Longer/Shorter Length of Coverage: If none of the above rules determine the order of payment, the plan covering the patient the longer time is primary.

If our records indicate this plan is secondary, we will not process your claims until you have filed them with the primary plan and the primary plan has made its benefit determination.

If this plan is secondary according to the above rules, it will not pay more than it would have paid if primary. We will compare primary liability to secondary liability and select the most cost-effective payment on a claim-by-claim basis. This means that we will first calculate our primary liability as if no other insurance coverage had been involved. We will then calculate secondary liability by subtracting the amount payable by the other insurance coverage from the covered charge. We will compare the primary liability to the secondary liability and pay the lesser amount.

# SUBROGATION

## Right of Subrogation

If we pay or provide any benefits for you under this plan, we are subrogated to all rights of recovery which you have in contract, tort, or otherwise against any person or organization for the amount of benefits we have paid or provided. That means that we may use your right to recover money from that other person or organization.

## Right of Reimbursement

Besides the right of subrogation, we have a separate right to be reimbursed or repaid from any money you, including your family members, recover for an injury or condition for which we've paid plan benefits. This means that you promise to repay us from any money you recover the amount we've paid or provided in plan benefits. It also means that if you recover money as a result of a claim or a lawsuit, whether by settlement or otherwise, you must repay us. And, if you are paid by any person or company besides us, including the person who injured you, that person's insurer, or your own insurer, you must repay us. In these and all other cases, you must repay us.

We have the right to be reimbursed or repaid first from any money you recover, even if you are not paid for all of your claim for damages and you aren't made whole for your loss. This means that you promise to repay us first even if the money you recover is for (or said to be for) a loss besides plan benefits, such as pain and suffering. It also means that you promise to repay us first even if another person or company has paid for part of your loss. And it means that you promise to repay us first even if the person who recovers the money is a minor. In these and all other cases, we still have the right to first reimbursement or repayment out of any recovery you receive from any source.

## Right to Recovery

You agree to furnish us promptly all information which you have concerning your rights of recovery or recoveries from other persons or organizations and to fully assist and cooperate with us in protecting and obtaining our reimbursement and subrogation rights in accordance with this section.

You or your attorney will notify us before filing any suit or settling any claim so as to enable us to participate in the suit or settlement to protect and enforce our rights under this section. If you do notify us so that we are able to and do recover the amount of our benefit payments for you, we will share proportionately with you in any attorney's fees charged you by your attorney for obtaining the recovery. If you do not give us that notice, our reimbursement or subrogation recovery under this section will not be decreased by any attorney's fee for your attorney.

You further agree not to allow our reimbursement and subrogation rights under this plan to be limited or harmed by any other acts or failures to act on your part. It is understood and agreed that if you do, we may suspend or terminate payment or provision of any further benefits for you under the plan.

# CLAIMS AND APPEALS

The following explains the rules under your group health plan for filing claims and appeals.

Remember that you may always call our Customer Service Department for help if you have a question or problem that you would like us to handle without an appeal. The phone number to reach our Customer Service Department is on the back of this booklet.

## In General

Claims for benefits under the plan can be post-service, pre-service, or concurrent. This section of your booklet explains how we process these different types of claims and how you can appeal a partial or complete denial of a claim.

The claims and appeal procedures are designed to comply with the requirements of the Employee Retirement Income Security Act of 1974 (ERISA). Even if your plan is not covered by ERISA, we will process your claim according to ERISA's standards and provide you with the ERISA appeal rights that are discussed in this section of your booklet.

You must act on your own behalf or through an authorized representative if you wish to exercise your rights under this section of your booklet. An authorized representative is someone you designate in writing to act on your behalf. We have developed a form that you must use if you wish to designate an authorized representative. You can get the form by calling our Customer Service Department. You can also go to our Internet web site at **www.bcbsal.com** and ask us to mail you a copy of the form. If a person is not properly designated as your authorized representative, we will not be able to deal with him or her in connection with the exercise of your rights under this section of your booklet.

For urgent pre-service claims, we will presume that your provider is your authorized representative unless you tell us otherwise in writing.

## Post-Service Claims

**What Constitutes a Claim:** For you to obtain benefits after medical services have been rendered or supplies purchased (a post-service claim), we must receive a properly completed and filed claim from you or your provider.

In order for us to treat a submission by you or your provider as a post-service claim, it must be submitted on a properly completed standardized claim form or, in the case of electronically filed claims, must provide us with the data elements that we specify in advance. Most providers are aware of our claim filing requirements and will file claims for you. If your provider does not file your claim for you, you should call our Customer Service Department and ask for a claim form. Tell us the type of service or supply for which you wish to file a claim (for example, hospital, physician, or pharmacy), and we will send you the proper type of claim form. When you receive the form, complete it, attach an itemized bill, and send it to us at 450 Riverchase Parkway East, Birmingham, Alabama 35244-2858. Claims must be submitted and received by us within 24 months after the service takes place to be eligible for benefits.

If we receive a submission that does not qualify as a claim, we will notify you or your provider of the additional information we need. Once we receive that information, we will process the submission as a claim.

**Processing of Claims:** Even if we have received all of the information that we need in order to treat a submission as a claim, from time to time we might need additional information in order to determine whether the claim is payable. The most common example of this is medical records that we may need in order to determine whether services or supplies were medically necessary. If we need this sort of additional information, we will ask you to furnish it to us, and we will suspend

30

further processing of your claim until the information is received. You will have 90 days to provide the information to us. In order to expedite our receipt of the information, we may request it directly from your provider. If we do this, we will send you a copy of our request. However, you will remain responsible for seeing that we get the information on time.

Ordinarily, we will notify you of our decision within 30 days of the date on which your claim is filed. If it is necessary for us to ask for additional information, we will notify you of our decision within 15 days after we receive the requested information. If we do not receive the information, your claim will be considered denied at the expiration of the 90-day period we gave you for furnishing the information to us.

In some cases, we may ask for additional time to process your claim. If you do not wish to give us additional time, we will go ahead and process your claim based on the information we have. This may result in a denial of your claim.

**Who Gets Paid:** Some of the contracts we have with providers of services, such as hospitals, require us to pay benefits directly to the providers. With other claims we may choose whether to pay you or the provider. If you or the provider owes us money we may deduct the amount owed from the benefit paid. When we pay or deduct the amount owed from you or the provider, this completes our obligation to you under the plan. We need not honor an assignment of your claim to anyone. Upon your death or incompetence, or if you are a minor, we may pay your estate, your guardian or any relative we believe is due to be paid. This, too, completes our plan obligation to you.

## Pre-Service Claims

A pre-service claim is one in which you are required to obtain approval from us before services or supplies are rendered. For example, you may be required to obtain precertification of inpatient hospital benefits. Or you may be required to obtain a pre-procedure review of other medical services or supplies in order to obtain coverage under the plan. Pre-service claims pertain only to the medical necessity of a service or supply. If we grant a pre-service claim, we are not telling you that the service or supply is, or will be, covered; we are only telling you that the service or supply meets our medical necessity guidelines. For example, we might precertify your inpatient hospital admission but later deny your claim because the admission related to a pre-existing condition or was for a service or supply that is excluded under the plan.

In order to file a pre-service claim you or your provider must call our Health Management Department at 205 988-2245 (in Birmingham) or 1 800 248-2342 (toll-free). You must tell us your contract number, the name of the facility in which you are being admitted (if applicable), the name of a person we can call back, and a phone number to reach that person. You may also, if you wish, submit pre-service claims in writing. Written pre-service claims should be sent to us at 450 Riverchase Parkway East, Birmingham, Alabama 35244-2858.

Non-urgent pre-service claims (for example, those relating to elective services and supplies) must be submitted to us during our regular business hours. Urgent pre-service claims can be submitted at any time. Emergency admissions to a hospital do not require you to file a pre-service claim so long as you provide notice to us within 48 hours of the admission and we certify the admission as both medically necessary and as an emergency admission. You are not required to precertify an inpatient hospital admission if you are admitted to a Concurrent Utilization Review (CURP) hospital by a Preferred Medical Doctor (PMD Physician). If your plan provides chiropractic, physical therapy, or occupational therapy benefits and you receive covered treatment from a Participating Chiropractor, Preferred Physical Therapist, or Preferred Occupational Therapist, your provider is responsible for initiating the precertification process for you. For home health care and hospice benefits (if covered by your plan), see the previous sections of this booklet for instructions on how to precertify treatment.

If you attempt to file a pre-service claim but fail to follow our procedures for doing so, we will notify you of the failure within 24 hours (for urgent pre-service claims) or five days (for non-urgent pre-service claims). Our notification may be oral, unless you ask for it in writing. We will provide this notification to you only if (i) your attempt to submit a pre-service claim was received by a person or organizational unit of our company that is customarily responsible for handling benefit matters, and (ii) your submission contains the name of a member, a specific medical condition or symptom, and a specific treatment or service for which approval is being requested.

**Urgent Pre-Service Claims:** We will treat your claim as urgent if a delay in processing your claim could seriously jeopardize your life, health, or ability to regain maximum function or, in the opinion of your treating physician, a delay would subject you to severe pain that cannot be managed without the care or treatment that is the subject of your claim. If your treating physician tells us that your claim is urgent, we will treat it as such.

If your claim is urgent, we will notify you of our decision within 72 hours. If we need more information, we will let you know within 24 hours of your claim. We will tell you what further information we need. You will then have 48 hours to provide this information to us. We will notify you of our decision within 48 hours after we receive the requested information. Our response may be oral; if it is, we will follow it up in writing within three days. If we do not receive the information, your claim will be considered denied at the expiration of the 48-hour period we gave you for furnishing the information to us.

**Non-Urgent Pre-Service Claims:** If your claim is not urgent, we will notify you of our decision within 15 days. If we need more information, we will let you know before the 15-day period expires. We will tell you what further information we need. You will then have 90 days to provide this information to us. In order to expedite our receipt of the information, we may request it directly from your provider. If we do this, we will send you a copy of our request. However, you will remain responsible for seeing that we get the information on time. We will notify you of our decision within 15 days after we receive the requested information. If we do not receive the information, your claim will be considered denied at the expiration of the 90-day period we gave you for furnishing the information to us.

**Courtesy Pre-Determinations:** For some procedures we encourage, but do not require, you to contact us before you have the procedure. For example, if you or your physician thinks a procedure might be excluded as cosmetic, you can ask us to determine beforehand whether the procedure is cosmetic or reconstructive. We call this type of review a courtesy pre-determination. If you ask for a courtesy pre-determination, we will do our best to provide you with a timely response. If we decide that we cannot provide you with a courtesy pre-determination (for example, we cannot get the information we need to make an informed decision), we will let you know. In either case, courtesy pre-determinations are not pre-service claims under the plan. When we process requests for courtesy pre-determinations, we are not bound by the time frames and standards that apply to pre-service claims. In order to request a courtesy pre-determination, you or your provider should call our Customer Service Department.

## Concurrent Care Determinations

**Determinations by us to Limit or Reduce Previously Approved Care:** If we have previously approved a hospital stay or course of treatment to be provided over a period of time or number of treatments, and we later decide to limit or reduce the previously approved stay or course of treatment, we will give you enough advance written notice to permit you to initiate an appeal and obtain a decision before the date on which care or treatments are no longer approved. You must follow any reasonable rules we establish for the filing of your appeal, such as time limits within which the appeal must be filed.

**Requests by You to Extend Previously Approved Care:** If a previously approved hospital stay or course of treatment is about to expire, you may submit a request to extend your approved care. You may make this request in writing or orally either directly to us or through your treating physician or a hospital representative. The phone numbers to call in order to request an extension

of care are as follows:

- For inpatient hospital care, call 205 988-2245 (in Birmingham) or 1 800 248-2342 (toll-free).

- For Preferred Physical Therapy or Occupational Therapy (if covered by your plan) call 205 220-7202.

- For care from a Participating Chiropractor (if covered by your plan) call 205 220-6128.

If your request for additional care is urgent, and if you submit it no later than 24 hours before the end of your pre-approved stay or course of treatment, we will give you our decision within 24 hours of when your request is submitted. If your request is not made before this 24-hour time frame, and your request is urgent, we will give you our determination within 72 hours. If your request is not urgent, we will treat it as a new claim for benefits, and will make a determination on your claim within the pre-service or post-service time frames discussed above, as appropriate.

## Your Right To Information

You have the right, upon request, to receive copies of any documents that we relied on in reaching our decision and any documents that were submitted, considered, or generated by us in the course of reaching our decision. You also have the right to receive copies of any internal rules, guidelines, or protocols that we may have relied upon in reaching our decision. If our decision was based on a medical or scientific determination (such as medical necessity), you may also request that we provide you with a statement explaining our application of those medical and scientific principles to you. If we obtained advice from a health care professional (regardless of whether we relied on that advice), you may request that we give you the name of that person. Any request that you make for information under this paragraph must be in writing. We will not charge you for any information that you request under this paragraph.

## Member Satisfaction

If you are dissatisfied with our handling of a claim or have any questions or complaints, you may do one or more of the following:

- You may call or write our Customer Service Department. We will help you with questions about your coverage and benefits or investigate any adverse benefit determination you might have received.

- You may file an appeal if you have received an adverse benefit determination.

Your satisfaction is important to us. We will do our utmost to maintain it.

## Appeals

**In General:** The rules in this section of the booklet allow you or your authorized representative to appeal any adverse benefit determination. An adverse benefit determination includes any one or more of the following:

- any determination we make with respect to a post-service claim that results in your owing any money to your provider other than copayments you make, or are required to make, to your provider;

- our denial of a pre-service claim; or,

- an adverse concurrent care determination (for example, we deny your request to extend previously approved care).

In all cases other than determinations by us to limit or reduce previously approved care, you have 180 days following our adverse benefit determination within which to submit an appeal.

**How to Appeal Post-Service Adverse Benefit Determinations:** If you wish to file an appeal of an adverse benefit determination relating to a post-service claim we recommend that you use a form that we have developed for this purpose. The form will help you provide us with the information that we need to consider your appeal. To get the form, you may call our Customer Service Department. You may also go to our Internet web site at **www.bcbsal.com**. Once there, you may ask us to send a copy of the form to you.

If you choose not to use our appeal form, you may send us a letter. Your letter must contain at least the following information:

- the patient's name;

- the patient's contract number;

- sufficient information to reasonably identify the claim or claims being appealed, such as date of service, provider name, procedure (if known), and claim number (if available) (the best way to satisfy this requirement is to include a copy of your Claims Report with your appeal); and,

- a statement that you are filing an appeal.

You must send your appeal to the following address:

Blue Cross and Blue Shield of Alabama
Attention: Customer Service Appeals
P. O. Box 12185
Birmingham, Alabama 35202-2185

Please note that if you call or write us without following the rules just described for filing an appeal, we will not treat your inquiry as an appeal. We will, of course, do everything we can to resolve your questions or concerns.

**How to Appeal Pre-Service Adverse Benefit Determinations:** You may appeal an adverse benefit determination relating to a pre-service claim in writing or over the phone.

If over the phone, you should call the appropriate phone number listed below:

- For inpatient hospital care and admissions, call 205 988-2245 (in Birmingham) or 1 800 248-2342 (toll-free).

- For Preferred Physical Therapy or Occupational Therapy (if covered by your plan) call 205 220-7202.

- For care from a Participating Chiropractor (if covered by your plan) call 205 220-6128.

If in writing, you should send your letter to the appropriate address listed below:

- For inpatient hospital care and admissions:

Blue Cross and Blue Shield of Alabama
Attention: Health Management – Appeals
P. O. Box 2504
Birmingham, Alabama 35201-2504

and

34

- For Preferred Physical Therapy, Occupational Therapy, or care from a Participating Chiropractor (when covered by your plan):

Blue Cross and Blue Shield of Alabama
Attention: Health Management – Appeals
P. O. Box 362025
Birmingham, Alabama 35236

Your written appeal should provide us with your name, contract number, the name of the facility or provider involved, and the date or dates of service.

Please note that if you call or write us without following the rules just described for filing an appeal, we will not treat your inquiry as an appeal. We will, of course, do everything we can to resolve your questions or concerns.

**Conduct Of The Appeal:** We will assign your appeal to one or more persons within our organization who are neither the persons who made the initial determination nor subordinates of those persons. If resolution of your appeal requires us to make a medical judgment (such as whether services or supplies are medically necessary), we will consult a health care professional who has appropriate expertise. If we consulted a health care professional during our initial decision, we will not consult that same person or a subordinate of that person during our consideration of your appeal.

If we need more information, we will ask you to provide it to us. In some cases we may ask your provider to furnish that information directly to us. If we do this, we will send you a copy of our request. However, you will remain responsible for seeing that we get the information. If we do not get the information, it may be necessary for us to deny your appeal.

We will consider your appeal fully and fairly.

**Time Limits For Our Consideration Of Your Appeal:** If your appeal arises from our denial of a post-service claim, we will notify you of our decision within 60 days of the date on which you filed your appeal.

If your appeal arises from our denial of a pre-service claim, and if your claim is urgent, we will consider your appeal and notify you of our decision within 72 hours. If your pre-service claim is not urgent, we will give you a response within 30 days.

If your appeal arises out of a determination by us to limit or reduce a hospital stay or course of treatment that we previously approved for a period of time or number of treatments, (see Concurrent Care Determinations above), we will make a decision on your appeal as soon as possible, but in any event before we impose the limit or reduction.

If your appeal relates to our decision not to extend a previously approved length of stay or course of treatment (see Concurrent Care Determinations above), we will make a decision on your appeal within 72 hours (in urgent pre-service cases), 30 days (in non-urgent pre-service cases), or 60 days (in post-service cases).

In some cases, we may ask for additional time to process your appeal. If you do not wish to give us additional time, we will go ahead and decide your appeal based on the information we have. This may result in a denial of your appeal.

**If You Are Dissatisfied After Exhausting Your Mandatory Plan Administrative Remedies:** If you have filed an appeal and are dissatisfied with our response, you may do one or more of the following:

- you may ask our Customer Service Department for further help;

- you may file a voluntary appeal (discussed below); or,

- you may file a lawsuit in federal court under Section 502(a) of ERISA or in the forum specified in your plan if your claim is not a claim for benefits under Section 502(a) of ERISA.

**Voluntary Appeals:** If we have given you our appeal decision and you are still dissatisfied, you may file a second appeal (called a voluntary appeal). If your voluntary appeal relates to a pre-service adverse benefit determination, you may file your appeal in writing or over the phone. If over the phone, you should call the phone number you called to submit your first appeal. If in writing, you should send your letter to the same address you used when you submitted your first appeal.

Your written appeal must state that you are filing a voluntary appeal.

If you file a voluntary appeal (whether oral or written), we will not assert in court a failure to exhaust administrative remedies if you fail to exhaust the voluntary appeal. We will also agree that any defense based upon timeliness or statutes of limitations will be tolled during the time that your voluntary appeal is pending. In addition, we will not impose any fees or costs on you as part of your voluntary appeal.

You may ask us to provide you with more information about voluntary appeals. This additional information will allow you to make an informed judgment about whether to request a voluntary appeal.

## Insurance Department

If you have general insurance questions or if you are dissatisfied with an appeal decision from Blue Cross and Blue Shield of Alabama, you have the right to contact the Alabama Department of Insurance. For health insurance questions, contact the DOI by phone at 334 241-4141. The mailing address is P. O. Box 303351, Montgomery, Alabama 36130-3351. The web address is **www.aldoi.gov**.

# GENERAL INFORMATION

## Delegation of Discretionary Authority to Blue Cross

The employer has delegated to us the discretionary responsibility and authority to determine claims under the plan, to construe, interpret, and administer the plan, and to perform every other act necessary or appropriate in connection with our provision of administrative services under the plan. Whenever we make reasonable determinations that are neither arbitrary nor capricious in our administration of the plan, those determinations will be final and binding on you, subject only to your right of review under the plan and thereafter to judicial review to determine whether our determination was arbitrary or capricious.

## ARBITRATION

**THIS ARBITRATION PROVISION DOES NOT APPLY TO CLAIMS FOR BENEFITS UNDER SECTION 502(a) OF ERISA.**

**IN CONSIDERATION OF COVERAGE UNDER THE PLAN AND PAYMENT OF PREMIUMS, YOU (AND WE) AGREE THAT ANY ONE OR MORE OF THE FOLLOWING CLAIMS SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION:**

- **ANY CLAIM THAT ARISES OUT OF OR RELATES TO THE PLAN;**

- ANY CLAIM THAT INVOLVES ANY RELATIONSHIPS THAT RESULT FROM OR RELATE IN ANY WAY TO THE PLAN (INCLUDING CLAIMS INVOLVING PERSONS OR ORGANIZATIONS WHO ARE NOT PARTIES TO THE PLAN);

- ANY CLAIM THAT ALLEGES ANY CONDUCT BY YOU OR US, REGARDLESS OF WHETHER RELATED TO THE PLAN; OR

- ANY CLAIM THAT CONCERNS THE VALIDITY, ENFORCEABILITY, SCOPE, OR ANY OTHER ASPECT OF THIS ARBITRATION PROVISION.

THIS ARBITRATION AGREEMENT IS INTENDED TO HAVE THE BROADEST SCOPE PERMISSIBLE BY LAW, AND INCLUDES ANY AND ALL CLAIMS, WHETHER IN PLAN, TORT, OR OTHERWISE, WHETHER ARISING BEFORE, ON, OR AFTER THE DATE OF COVERAGE UNDER THE PLAN, AND INCLUDING WITHOUT LIMITATION ANY STATUTORY, COMMON LAW, INTENTIONAL TORT, OR EQUITABLE CLAIMS.

THE ARBITRATOR SHALL APPLY GOVERNING FEDERAL LAW, SUCH AS THE FEDERAL ARBITRATION ACT (FAA) AND, TO THE EXTENT FEDERAL LAW IS NOT APPLICABLE, STATE LAW. THE ARBITRATOR SHALL APPLY ALL APPLICABLE STATUTES OF LIMITATIONS AND ANY CLAIMS OF PRIVILEGE RECOGNIZED BY LAW.

THE CLAIMANT IS RESPONSIBLE FOR STARTING THE ARBITRATION PROCEEDINGS BY NOTIFYING THE OTHER PARTY IN WRITING OF THE ARBITRATION DEMAND. IF THE SUBSCRIBER OR MEMBER IS THE CLAIMANT, THE WRITTEN ARBITRATION DEMAND SHOULD BE SENT TO THE FOLLOWING ADDRESS:

> BLUE CROSS AND BLUE SHIELD OF ALABAMA
> LEGAL DEPARTMENT
> 450 RIVERCHASE PARKWAY EAST
> BIRMINGHAM, ALABAMA 35242

THE ARBITRATION SHALL BE CONDUCTED BEFORE A SINGLE ARBITRATOR WHO SHALL BE CHOSEN BY THE JOINT AGREEMENT OF THE PARTIES, WITH THE SELECTION TO OCCUR ORDINARILY WITHIN ONE MONTH FROM THE RECEIPT OF THE DEMAND FOR ARBITRATION. IF THE PARTIES CANNOT AGREE ON AN ARBITRATOR, THEY SHALL OBTAIN A LIST OF SEVEN ARBITRATORS FROM THE AMERICAN ARBITRATION ASSOCIATION. THE LIST SHALL BE REDUCED TO ONE ARBITRATOR BY ALTERNATIVE STRIKES, WITH THE CLAIMANT STRIKING FIRST. ALL PARTIES SHALL BE ENTITLED PRIOR TO THE ARBITRATION HEARING TO THE PRODUCTION OF DOCUMENTS RELEVANT TO THE CLAIMANT'S INDIVIDUAL CLAIM AND DEFENSES AND TO THE DEPOSITIONS OF THE KEY WITNESSES. THE ARBITRATION HEARING SHALL ORDINARILY COMMENCE WITHIN FOUR MONTHS OF THE SELECTION OF THE ARBITRATOR UNLESS THE PARTIES AGREE OTHERWISE. ALL DISPUTES CONCERNING ARBITRATION PROCEDURES SHALL BE RESOLVED BY THE ARBITRATOR.

WE WILL BEAR ALL COSTS OF ARBITRATION OTHER THAN YOUR COSTS OF REPRESENTATION. BUT IF YOU INITIATE THE ARBITRATION, AND IF THE ARBITRATOR FINDS THAT THE DISPUTE IS WITHOUT SUBSTANTIAL JUSTIFICATION, THE ARBITRATOR HAS THE AUTHORITY TO ORDER THAT THE COST OF THE ARBITRATION PROCEEDINGS BE BORNE BY YOU.

THE ARBITRATION WILL OCCUR IN THE COUNTY IN WHICH YOU RESIDE UNLESS THE PARTIES AGREE TO A DIFFERENT LOCATION. PRIOR TO THE ARBITRATION, IF ALL PARTIES CONSENT TO MEDIATE THE CLAIM, THE CLAIM WILL BE REFERRED TO A SEPARATE MEDIATOR, BUT ARBITRATION WILL FOLLOW IF NO SETTLEMENT IS REACHED.

THE ARBITRATOR SHALL BE EMPOWERED TO GRANT WHATEVER RELIEF WOULD BE AVAILABLE IN COURT UNDER LAW OR EQUITY, EXCEPT AS EXPRESSLY LIMITED BY THE CONTRACT. THE ARBITRATOR'S DECISION SHALL BE IN WRITING, SHALL CONTAIN FINDINGS OF FACT AND CONCLUSIONS OF LAW, AND SHALL SPECIFIY THE TYPE OF ANY DAMAGES OR RELIEF AWARDED.

IN ALL CASES, THE ARBITRATOR'S DECISION SHALL BE FINAL AND BINDING, EXCEPT THAT IT MAY BE REVIEWED IN COURT TO THE LIMITED EXTENT PERMITTED BY THE FAA AND THIS PARAGRAPH. MOREOVER, IF THE AMOUNT IN CONTROVERSY EXCEEDS $50,000, ON APPEAL BY EITHER PARTY, THE COURT SHALL ALSO REVIEW THE ARBITRATOR'S DECISION USING THE STANDARD OF APPELLATE REVIEW APPLICABLE WHENEVER A COURT REVIEWS THE DECISION OF A TRIAL COURT SITTING WITHOUT A JURY. THE FOLLOWING RULES SHALL APPLY WHEN DETERMINING THE AMOUNT IN CONTROVERSY: (1) ALL CLAIMS OF ALL CLAIMANTS IN THE PROCEEDING SHALL BE AGGREGATED, AND (2), CLAIMS FOR UNSPECIFIED AMOUNTS, SUCH AS EMOTIONAL DISTRESS AND PUNITIVE DAMAGES, SHALL BE DEEMED TO EXCEED $50,000.

THIS PLAN IS MADE PURSUANT TO A TRANSACTION INVOLVING INTERSTATE COMMERCE, AND IS GOVERNED BY THE FAA. IF ANY PORTION OF THIS ARBITRATION PROVISION IS DEEMED INVALID OR UNENFORCEABLE, THE REMAINING PORTIONS SHALL CONTINUE IN FULL FORCE AND EFFECT.

## Notice

We give you notice when we mail it or send it electronically to you or your group at the latest address we have. You and your group are assumed to receive notice three days after we mail it. Your group is your agent to receive notices from us about the plan. The group is responsible for giving you all notices from us. We are not responsible if your group fails to do so. Mail notices to us at 450 Riverchase Parkway East, Birmingham, Alabama 35244-2858, with your full name and contract number. We get notice when it arrives at this address.

## Correcting Payments

While we try to pay all claims quickly and correctly, we do make mistakes. If we pay you or a provider in error, the payee must repay us. If he does not, we may deduct the amount paid in error from any future amount paid to you or the provider. If we deduct it from an amount paid to you, it will show in your Claim Report.

## Responsibility for Providers

We are not responsible for what providers do or fail to do. If they refuse to treat you or give you poor or dangerous care, we cannot be responsible. We need not do anything to enable them to treat you.

## Misrepresentation

If you make any material misrepresentation in applying for coverage, when we learn of this we may terminate your coverage back to your effective date. We need not even refund any payment for your coverage. If your group materially misrepresents its application it will be as though the plan never took effect, and we need not even refund any payment for any member.

38

## Respecting Your Privacy

To administer this plan we need your medical information from physicians, hospitals and others. To decide if your claim should be paid or denied or whether other parties are legally responsible for some or all of your expenses, we need records from health care providers and other plan administrators. By applying for coverage and participating in this plan, you authorize us to obtain, use and release all records about you and your minor dependents that we need in order to administer this plan. If you or any provider refuse to provide records, information or evidence we request within reason, we may deny any more payments to the one refusing. We will strive to keep this information confidential and release it only to others who have a legitimate need for the information. We will not be liable for uses of the information which we have not authorized.

## Multiple Coverage

If you are covered both by this contract and by a non-group contract we issue, you will be entitled to benefits only under the one that provides the most coverage for you.

## Applicable Law

The federal ERISA law governs this plan. If any state law applies, the law of Alabama governs.

## Plan Terminations

1. The plan may be terminated at any time by either the group or Blue Cross by giving 30 days notice in writing to the other.

2. The plan may be terminated by Blue Cross immediately by notice in writing to the group when the group has other group health coverage.

3. If the group fails to pay the amount due within 30 days after it becomes due, the plan will terminate automatically and without notice to you or the group as of the date due for the payment.

## Plan Changes

1. By giving 30 days notice in writing to the group, we may change the amount of the payment for coverage or change, add, or remove any other provisions in the plan or in your coverage without sending individual notices to you only. The group solely is responsible for notifying you of the change. The change will be effective whether or not the group notified you of the change, and we are not responsible for any failure to do so.

   The notice of change will state the effective date of the change. The change will apply to all benefits for services you receive on or after the stated effective date. If the group submits payment for coverage to us after a notice of changes, it will be considered acceptance by you and the group of the new payment amount or other plan changes.

2. By written agreement between the group and Blue Cross, signed by Blue Cross's officer, the plan and any of its provisions and coverage may be changed, removed, or added without sending individual notices to you.

3. The plan can be changed only through changes made in writing and signed by Blue Cross's officer in the manner stated above. None of Blue Cross's representatives, officers, employees, or agents can make any contract changes orally, as by telephone, or in any other way except in writing as described above.

## Out-of-Area Co-Pay and Co-Insurance

When you obtain health care services through the BlueCard Program outside of the Alabama service area, the amount you pay for covered services is calculated on the **lower** of:

1. The billed charges for your covered services, or

2. The negotiated price that the on-site Blue Cross and/or Blue Shield plan ("Host Plan") passes on to us.

Often, this "negotiated price" will consist of a simple discount which reflects the actual price paid by the Host Plan. But sometimes it is an estimated price that factors into the actual price expected settlements, withholds, any other contingent payment arrangements and non-claims transactions with your health care provider or with a specified group of providers. The negotiated price may also be billed charges reduced to reflect an **average** expected savings with your health care provider or with a specified group of providers. The price that reflects average savings may result in greater variation (more or less) from the actual price paid than will the estimated price. The negotiated price may also be adjusted in the future to correct for over- or underestimation of past prices. However, the amount you pay is considered a final price.

Statutes in a small number of states may require the Host Plan to use a basis for calculating your payment for covered services that does not reflect the entire savings realized, or expected to be realized, on a particular claim or to add a surcharge. Should any state statutes mandate payment calculation methods that differ from the usual BlueCard method noted above in paragraph one of this section or require a surcharge, we would then calculate your liability for any covered health care services in accordance with the applicable state statute in effect at the time you received your care.

# HEALTH BENEFIT EXCLUSIONS

We **will not** provide benefits for the following:

1. Services or expenses we determine are not medically necessary.

2. Services, care, or treatment you receive during any period of time that we have not been paid for your coverage and that nonpayment results in plan termination.

3. Services, care, or treatment you receive after the date your coverage ends. This means, for example, that if you are in the hospital when your coverage ends, we will not pay for any more hospital days. We do not insure against any condition such as pregnancy or injury. We provide benefits only for services and expenses furnished while this plan is in effect.

4. Services or expenses for cosmetic surgery. "Cosmetic surgery" is any surgery done primarily to improve or change the way one appears. "Reconstructive surgery" is any surgery done primarily to restore or improve the way the body works or correct deformities that result from disease, trauma or birth defects. Reconstructive surgery is a covered benefit; cosmetic surgery is not. (See the section, Women's Health and Cancer Rights Act, for exceptions.) Complications or later surgery related in any way to cosmetic surgery is not covered, even if medically necessary, if caused by an accident, or if done for mental or emotional relief.

   a. Please contact us prior to surgery to find out whether a procedure will be reconstructive or cosmetic. You and your physician must prove to our satisfaction that surgery is reconstructive and not cosmetic. You must show us history and physical exams, visual fields measures and photographs before and after surgery.

   b. Some surgery is always cosmetic such as ear piercing, neck tucks, face lifts, buttock and thigh lifts, implants to small but normal breasts (except as provided by the Women's

40

Health and Cancer Rights Act), hair implants for male pattern baldness and correction of frown lines on the forehead. In other surgery, such as blepharoplasty (eyelids), rhinoplasty (nose), chemical peel and chin implants, it depends on why that procedure was done. For example, a person with a deviated septum may have trouble breathing and many sinus infections. To correct this they have a septoplasty. During surgery the physician may remove a hump or shorten the nose (rhinoplasty). The septoplasty would be reconstructive surgery while the rhinoplasty would be denied as cosmetic surgery. Surgery to remove excess skin from the eyelids (blepharoplasty) would be cosmetic if done to improve your appearance but reconstructive if done because your eyelids kept you from seeing very well.

5. Services or expenses to care for, treat, fill, extract, remove or replace teeth or to increase the periodontium. The periodontium includes the gums, the membrane surrounding the root of a tooth, the layer of bone covering the root of a tooth and the upper and lower jaws and their borders, which contain the sockets for the teeth. Care to treat the periodontium, dental pulp or "dead" teeth, irregularities in the position of the teeth, artificial dental structures such as crowns, bridges or dentures, or any other type of dental procedure is excluded. Hydroxyapatite or any other material to make the gums rigid is excluded. It does not matter whether their purpose is to improve conditions inside or outside the mouth (oral cavity). These services, supplies or expenses are not covered even if they are used to prepare a patient for services or procedures that are plan benefits. Braces on the teeth are excluded for any purpose, even to prepare a person with a cleft palate for surgery on the bones of the jaw. With the exception of braces, which are never covered under the medical plan, this exclusion does not apply to those services by a physician to treat or replace natural teeth which are harmed by accidental injury covered under Other Covered Services.

6. Dental implants into, across, or just above the bone and related appliances. Services or expenses to prepare the mouth for dental implants such as those to increase the upper and lower jaws or their borders, sinus lift process, guided tissue regrowth or any other surgery, bone grafts, hydroxyapatite and similar materials. These services, supplies or expenses, even if medically or dentally necessary, are not covered under the medical plan even if they are needed to treat conditions existing at birth, while growing, or resulting from an accident.

7. Services or expenses rendered for any disease, injury or condition arising out of and in the course of employment for which benefits and/or compensation are available in whole or in part under the provisions of any workers' compensation or employers' liability laws, state or federal. This applies whether you fail to file a claim under that law. It applies whether the law is enforced against or assumed by the employer. It applies whether the law provides for hospital or medical services as such. It applies whether the provider of those services was authorized as required by the law. Finally, it applies whether your employer has insurance coverage for benefits under the law.

8. Services or expenses covered in whole or in part under the laws of the United States, any state, county, city, town or other governmental agency that provides or pays for care, through insurance or any other means. This applies even if the law does not cover all your expenses.

9. Services or supplies to the extent that a member is, or would be, entitled to reimbursement under Medicare, regardless of whether the member properly and timely applied for, or submitted claims to Medicare, except as otherwise required by federal law.

10. Routine well child care and routine immunizations except as provided in PPO benefits.

11. Routine physical examinations except as provided in PPO benefits.

12. Services or expenses for custodial care. Care is "custodial" when its primary purpose is to provide room and board, routine nursing care, training in personal hygiene, and other forms of self-care or supervisory care by a physician for a person who is mentally or physically disabled.

13. Investigational treatment, procedures, facilities, drugs, drug usage, equipment, or supplies, including services that are part of a clinical trial.

14. Services or expenses for routine foot care such as removal of corns or calluses or the trimming of nails (except mycotic nails).

15. Hospital admissions in whole or in part when the patient primarily receives services to rehabilitate such as physical therapy, speech therapy, or occupational therapy.

16. Services and expenses provided to a hospital patient which could have been provided on an outpatient basis, given the patient's condition and the services provided. Benefits for those services will apply as though the services were provided on an outpatient basis. Examples are hospital stays primarily for diagnosis, diagnostic study, medical observation, rehabilitation, physical therapy and hydrotherapy.

17. Services or expenses for, or related to, sexual dysfunctions or inadequacies not related to organic disease or which are related to surgical sex transformations.

18. Services for or related to pregnancy, including the six-week period after delivery, of any dependent other than the employee's wife.

19. Services or expenses for an accident or illness resulting from war, or any act of war, declared or undeclared, or from riot or civil commotion.

20. Services or expenses for treatment of injury sustained in the commission of a crime or for treatment while confined in a prison, jail, or other penal institution.

21. Services or expenses for which a claim is not properly submitted to Blue Cross.

22. Services or expenses for treatment of any condition including, but not limited to, obesity, diabetes, or heart disease, which is based upon weight reduction or dietary control or services or expenses of any kind to treat obesity, weight reduction or dietary control. This exclusion does not apply to surgery for morbid obesity if medically necessary and in compliance with guidelines of the Claims Administrator. Benefits will only be provided for one surgical procedure for obesity (morbid) in a lifetime. Benefits will not be provided for subsequent surgery for complications related to a covered surgical procedure for obesity (morbid) if the complications arise from non-compliance with medical recommendations regarding patient activity and lifestyle following the procedure.

23. Services or expenses which you are not legally obligated to pay, or for which no charge would be made if you had no health coverage.

24. Services or expenses for or related to organ, tissue or cell transplantations except specifically as allowed by this plan.

25. Dental treatment for or related to temporomandibular joint (TMJ) disorders. This includes Phase II, according to the guidelines approved by the Academy of Craniomandibular Disorders. These treatments permanently alter the teeth or the way they meet and include such services as balancing the teeth, shaping the teeth, reshaping the teeth, restorative treatment, treatment involving artificial dental structures such as crowns, bridges or dentures, full mouth rehabilitation, dental implants, treatment for irregularities in the position of the teeth or a combination of these treatments.

26. Services or expenses for or related to Assisted Reproductive Technology (ART). ART is any process of taking human eggs or sperm or both and putting them into a medium or the body to try to cause reproduction. Examples of ART are in vitro fertilization and gamete intrafallopian transfer.

42

27. Eyeglasses or contact lenses or related examination or fittings. One pair of eyeglasses, contact lenses or one pair of each will be covered under Other Covered Services if they replace the lens of the eye after eye surgery or injury or defect.

28. Services or expenses for eye exercises, eye refractions, visual training orthoptics, shaping the cornea with contact lenses, or any surgery on the eye to improve vision including radial keratotomy.

29. Services or expenses for personal hygiene, comfort or convenience items such as air-conditioners, humidifiers, whirlpool baths, and physical fitness or exercise apparel. Exercise equipment is also excluded. Some examples of exercise equipment are shoes, weights, exercise bicycles or tracks, weights or variable resistance machinery, and equipment producing isolated muscle evaluations and strengthening. Treatment programs, the use of equipment to strengthen muscles according to preset rules, and related services performed during the same therapy session are also excluded.

30. Services or expenses for recreational or educational therapy.

31. Services or expenses for acupuncture, biofeedback and other forms of self-care or self-help training.

32. Hearing aids or examinations or fittings for them.

33. Services or expenses of a hospital stay, except one for an emergency, unless we certify it before your admission. Services or expenses of a hospital stay for an emergency if we are not notified within 48 hours, or on our next business day after your admission, or if we determine that the admission was not medically necessary.

34. Services or expenses of private duty nurses.

35. Services provided by Psychiatric Specialty Hospitals which do not participate with nor are considered members of any Blue Cross and/or Blue Shield Plan.

36. Services, care, treatment, or supplies furnished by a provider that is not recognized by us as an approved provider for the services rendered as explained more fully in paragraph 5. under the section of this summary called "Benefit Conditions."

37. Services or expenses any provider rendered to a member who is related to the provider by blood or marriage or who regularly resides in the provider's household. Examples of a provider include a physician, a licensed registered nurse (R.N.), a licensed practical nurse (L.P.N.) or a licensed physical therapist.

38. Services and expenses rendered by a licensed physician assistant (P.A.) (including physician assistants who assist with surgery) who is not employed and acting under the direct supervision of a preferred provider.

39. Services provided by Substance Abuse Facilities including Substance Abuse Residential Facilities.

40. Services and expenses rendered by a Non-Preferred Home Health Care or Non-Preferred Hospice provider in Alabama.

41. Services or expenses of any kind for nicotine addiction such as smoking cessation treatment. The only exception to this exclusion is expenses for nicotine withdrawal drugs prescribed by a physician and dispensed by a licensed pharmacist from a Participating Pharmacy.

42. Drugs or medicines dispensed from a pharmacy which is not a Participating Pharmacy.

43. Travel, even if prescribed by your physician.

44. Inpatient care or treatment for mental and nervous disorders or disease (including alcoholism and drug addiction) in a psychiatric specialty hospital is covered under hospital benefits but is excluded under Other Covered Services. Once the basic hospital days are used, inpatient mental and nervous care is covered only in general hospitals which do not specialize in treatment of mental or nervous disorders.

45. Services or expenses of any kind provided by a Non-Participating Hospital located in Alabama for any benefits under this plan, except for inpatient and outpatient hospital benefits in case of accidental injury, as more fully described under "Inpatient Hospital Benefits" and "Outpatient Hospital Benefits."

46. Services or expenses for a claim we have not received within 24 months after services were rendered or expenses incurred.

47. Services or expenses for physical therapy which does not require a licensed physical therapist, given the level of simplicity and the patient's condition, will not further restore or improve the patient's bodily functions, or is not reasonable as to number, frequency or duration.

48. Services or expenses in any federal hospital or facility except as provided by federal law.

49. Services or expenses for sanitarium care, convalescent care, or rest care.

50. Anesthesia services or supplies, or both, by local infiltration.

51. Services provided through teleconsultation.

52. Services or expenses rendered by Non-PPO Certified Registered Nurse Practitioners (CRNP) or Non-PPO Certified Nurse Midwives (CNM).

53. Services provided by a Non-Participating Renal Dialysis Facility in Alabama.

# DEFINITIONS

**Accidental Injury:**   A traumatic injury to you caused solely by an accident.

**Allowed Amount:**   Benefit payments for covered services are based on the amount of the provider's charge that we recognize for payment of benefits. This amount is limited to the lesser of the provider's charge for care or the amount of that charge that is determined by us to be allowable depending on the type of provider utilized and the state in which services are rendered, as described below:

1) **Preferred Providers:** Blue Cross and Blue Shield plans contract with providers to furnish care for a negotiated price. This negotiated price is often a discounted rate, and the preferred provider normally accepts this rate (subject to any applicable copays, coinsurance, or deductibles that are the responsibility of the patient) as payment in full for covered services or care. The negotiated price applies only to services that are covered under the Plan and also covered under the contract that has been signed with the preferred provider. Please be aware that not all participating or contracting providers are preferred providers. Each local Blue Cross and/or Blue Shield plan determines which of its participating or contracting providers will be considered preferred providers.

2) **Non-Preferred Providers:** The Allowed Amount for care for non-preferred providers or for services or supplies not included in a preferred provider's contract is normally determined by the Blue Cross and/or Blue Shield plan where services are rendered. This amount may be based on the negotiated rate payable to preferred providers, or

may be based on the average or anticipated charge or discount for care in the area or state, or for care from that particular type of provider. When the local Blue Cross and/or Blue Shield plan does not provide us with appropriate pricing data or when we are determining the Allowed Amount for services or supplies by a non-preferred provider (or for services and supplies not included in the contract with the provider), Blue Cross and Blue Shield of Alabama determines the Allowed Amount using historical data and information from various sources such as, but not limited to:

- The charge for the same or a similar service;

- The relative complexity of the service;

- The preferred provider allowance for the same or a similar service;

- The average expected or estimated provider discount for the type of provider in the service area, as reported by the Blue Cross and Blue Shield Association from time to time;

- Applicable state health care factors;

- The rate of inflation using a recognized measure; and,

- Other reasonable limits, as required with respect to outpatient prescription drug costs.

Non-preferred providers include providers that have not signed a contract with the Blue Cross and/or Blue Shield plan where services are rendered as well as participating or contracting providers who have not been designated by the local Blue Cross and/or Blue Shield plan as preferred providers.

In this situation the provider may bill the member for charges in excess of the Allowed Amount. The Allowed Amount will not exceed the amount of the provider's charge.

**Alternative Benefits:**   A benefit program that gives you and your family an alternative to lengthy hospitalizations. It is designed to provide the patient with the best environment for recovery and in the most cost-effective setting. Also known as "Comprehensive Managed Care," "Individual Case Management," and "Care Management."

**Application:**   The subscriber's original application form and any written supplemental application we accept.

**Assisted Reproductive Technology (ART):**   Any combination of chemical and/or mechanical means of obtaining gametes and placing them into a medium (whether internal or external to the human body) to enhance the chance that reproduction will occur. Examples of ART include, but are not limited to, in vitro fertilization, gamete intrafallopian transfer, zygote intrafallopian transfer and pronuclear stage tubal transfer.

**Blue Cross:**   Blue Cross and Blue Shield of Alabama.

**BlueCard Program:**   An arrangement among Blue Cross Plans by which a member of one Blue Cross Plan receives benefits available through another Blue Cross Plan located in the area where services occur.

45

**Certification of Medical Necessity:** The written results of our review using recognized medical criteria to determine whether a member requires treatment in the hospital before he is admitted, or within 48 hours or the next business day after the admission in the case of emergency admissions. Certification of medical necessity means only that a hospital admission is medically necessary to treat your condition. Certification of medical necessity does not mean that your group has paid us all monies due for you. Certification of medical necessity does not consider whether your admission is excluded by this plan.

**Concurrent Utilization Review Program (CURP):** A program designed to promote the most efficient and effective use of health care resources while utilizing cost-effective methods to administer benefits.

**Contract:** The Group Health Benefits contract between your Employer and Blue Cross and Blue Shield of Alabama. The contract is made up of (1) your employer's Group Application for the contract; (2) this Summary Plan Description; and (3) any written change to this Summary Plan Description. Your contract number is listed on your ID card.

**Contract Effective Date:** The date the Group Health Benefits contract becomes effective; the same date we accept the Group Application.

**Cosmetic Surgery:** Any surgery done primarily to improve or change the way one appears, cosmetic surgery does not primarily improve the way the body works or correct deformities resulting from disease, trauma or birth defect. For important information on cosmetic surgery, see the "Exclusions" section.

**Custodial Care:** Care primarily to provide room and board for a person who is mentally or physically disabled.

**Dependent:** See the explanation in the "Eligibility and Enrollment" section.

**Durable Medical Equipment:** Equipment we approve as medically necessary to diagnose or treat an illness or injury or to prevent a condition from becoming worse. To be durable medical equipment an item must be made to withstand repeated use, be for a medical purpose rather than for comfort or convenience, be useful only if you are sick or injured, and be related to your condition and prescribed by your physician to use in your home.

**Effective Date:** The date on which the coverage of each individual subscriber and dependent begins as listed in Blue Cross's records.

**Eligible Person:** Any employee or member of the group or other person who meets the eligibility standards of their plan and is designated as eligible to us by the group.

**Family Coverage:** Coverage for a subscriber and one or more dependents.

**Fee Schedule:** The schedule of medical and surgical procedures and the fee amounts for those procedures under the Preferred Medical Doctor program and other Preferred Provider programs as applicable.

**Group:** The employer, association, or other entity which contracts with Blue Cross and through which you have coverage.

**Group Application:** The document in which the employer applies to us for a group benefits plan.

**Home Health Care Agency:** A Preferred or a Non-Preferred Home Health Care Agency.

**Hospice:** A Preferred or a Non-Preferred Hospice.

**Hospital:** A Participating or a Non-Participating Hospital as defined in this plan.

**Individual Case Management:**  Benefits which are an alternative to more expensive covered benefits. They provide the patient with the best environment for recovery and in the most cost-effective setting. Also known as "Comprehensive Managed Care" and "Care Management."

**Inpatient:**  A registered bed patient in a hospital.

**Investigational:**  Any treatment, procedure, facility, equipment, drugs, drug usage, or supplies that either we have not recognized as having scientifically established medical value, or that does not meet generally accepted standards of medical practice. When possible, we develop written criteria (called medical criteria) concerning services or supplies that we consider to be investigational. We base these criteria on peer-reviewed literature, recognized standards of medical practice, and technology assessments. We put these medical criteria in policies that we make available to the medical community and our members. We do this so that you and your providers will know in advance, when possible, what we will pay for. If a service or supply is considered investigational according to one of our published medical criteria policies, we will not pay for it. If the investigational nature of a service or supply is not addressed by one of our published medical criteria policies, we will consider it to be non-investigational only if the following requirements are met:

- The technology must have final approval from the appropriate government regulatory bodies;

- The scientific evidence must permit conclusions concerning the effect of the technology on health outcomes;

- The technology must improve the net health outcome;

- The technology must be as beneficial as any established alternatives; and,

- The improvement must be attainable outside the investigational setting.

It is important for you to remember that when we make determinations about the investigational nature of a service or supply we are making them solely for the purpose of determining whether to pay for the service or supply. All decisions concerning your treatment must be made solely by your attending physician and other medical providers.

**Medical Emergency:**  A medical condition that occurs suddenly and without warning with symptoms which are so acute and severe as to require immediate medical attention to prevent permanent damage to the health, other serious medical results, serious impairment to bodily function, or serious and permanent lack of function of any bodily organ or part.

**Medically Necessary or Medical Necessity:**  We use these terms to help us determine whether a particular service or supply will be covered. When possible, we develop written criteria (called medical criteria) that we use to determine medical necessity. We base these criteria on peer-reviewed literature, recognized standards of medical practice, and technology assessments. We put these medical criteria in policies that we make available to the medical community and our members. We do this so that you and your providers will know in advance, when possible, what we will pay for. If a service or supply is not medically necessary according to one of our published medical criteria policies, we will not pay for it. If a service or supply is not addressed by one of our published medical criteria policies, we will consider it to be medically necessary only if we determine that it is:

- appropriate and necessary for the symptoms, diagnosis, or treatment of your medical condition;

- provided for the diagnosis or direct care and treatment of your medical condition;

- in accordance with standards of good medical practice accepted by the organized

medical community;

- not primarily for the convenience and/or comfort of you, your family, your physician, or another provider of services;

- not "investigational;" and,

- performed in the least costly setting, method, or manner, or with the least costly supplies, required by your medical condition. A "setting" may be your home, a physician's office, an ambulatory surgical facility, a hospital's outpatient department, a hospital when you are an inpatient, or another type of facility providing a lesser level of care. Only your medical condition is considered in deciding which setting is medically necessary. Your financial or family situation, the distance you live from a hospital or other facility, or any other non-medical factor is not considered. As your medical condition changes, the setting you need may also change. Ask your physician if any of your services can be performed on an outpatient basis or in a less costly setting.

It is important for you to remember that when we make medical necessity determinations, we are making them solely for the purpose of determining whether to pay for a medical service or supply. All decisions concerning your treatment must be made solely by your attending physician and other medical providers.

**Member:**  A subscriber or eligible dependent who has coverage under the contract. The term member also refers to a former dependent or subscriber who was not terminated for gross misconduct and who is eligible for and covered under COBRA.

**Mental and Nervous Disorders:**  These are mental disorders, mental illness, psychiatric illness, mental conditions and psychiatric conditions. These disorders, illnesses and conditions are considered mental and nervous disorders whether they are of organic, biological, chemical, or genetic origin. They are considered mental and nervous disorders however they are caused, based or brought on. Mental and nervous disorders include, but are not limited to, psychoses, neuroses, schizophrenic-affective disorders, personality disorders, and psychological or behavioral abnormalities associated with temporary or permanent dysfunction of the brain or related system of hormones controlled by nerves. They are intended to include disorders, conditions, and illnesses listed in the current Diagnostic and Statistical Manual of Mental Disorders.

**Non-Participating Hospital:**  Any hospital (other than a Participating Hospital) that has been approved by the Alabama Hospital Association or the American Hospital Association as a "general" hospital or meets the requirements of the American Hospital Association for registration or classification as a "general medical and surgical" hospital. "General" hospitals do not include those that are classified or could be classified under standards of the American Hospital Association as "special" hospitals. Examples of these "special" hospitals are those classified for psychiatric, alcoholism and other chemical dependency, rehabilitation, mental retardation, chronic disease or any other specialty. "General" hospitals also do not include facilities primarily for convalescent care or rest or for the aged, school or college infirmaries, sanatoria, or nursing homes.

**Non-Participating Pharmacy:**  Any pharmacy which is not a Participating Pharmacy.

**Non-PPO Provider:**  Any provider which is not a PPO Provider with any Blue Cross and/or Blue Shield Plan.

**Non-Preferred Home Health Care Agency:**  Any home health care agency which is not a Preferred Home Health Care Agency.

**Non-Preferred Hospice:**  Any hospice which is not a Preferred Hospice.

**PPO:**  Preferred Provider Organization.

48

**PPO Allowance:**  The amount that any Blue Cross and/or Blue Shield Plan has agreed to pay its PPO Provider for plan benefits.

**PPO Fee Schedule:**  The schedule of medical and surgical procedures and the fee amounts for those procedures under the Preferred Medical Doctor program and other Preferred Provider programs as applicable.

**PPO Hospital, PPO Physician, PPO Provider, or Preferred Provider:**  Any hospital, physician, or provider with which any Blue Cross and/or Blue Shield Plan has a PPO contract for the furnishing of health care services.

**Participating Ambulatory Surgical Facility:**  Any facility with which Blue Cross and Blue Shield of Alabama has a Participating Ambulatory Surgical Facility contract for furnishing health care services.

**Participating Hospital:**  Any hospital with which Blue Cross and/or Blue Shield Plan has a contract for furnishing health care services.

**Participating Pharmacy:**  Any pharmacy with which Blue Cross or its subsidiary, Preferred Care Services, Inc., has a contract for dispensing prescription drugs.

**Participating Renal Dialysis Facility:**  Any freestanding hemodialysis facility with which Blue Cross and Blue Shield of Alabama has a contract for furnishing health care services.

**Physician:**  One of the following when licensed and acting within the scope of that license at the time and place you are treated or receive services: Doctor of Medicine (M.D.), Doctor of Osteopathy (D.O.), Doctor of Dental Surgery (D.D.S), Doctor of Medical Dentistry (D.M.D.), Doctor of Chiropractic (D.C.), Doctor of Podiatry (D.P.M.), Doctor of Optometry (O.D.), PPO Certified Registered Nurse Practitioners, PPO Certified Nurse Midwives, and Psychologists who are licensed by the state in which they practice (Ph.D., Psy.D. or Ed.D.), as defined in Section 27-1-18 of the Alabama Code.

Effective as of October 22, 2004, the term "physician" will also include a licensed physician assistant (P.A.) (including physician assistants who assist with surgery) so long as the following requirements are satisfied at the time services are rendered: (i) the P.A. is employed by and acting under the direct supervision of a medical doctor (M.D.) who is a preferred provider; (ii) the P.A. is acting within the scope of his or her license and is in compliance with the rules, regulations, and parameters applicable under local law to the P.A.; and (iii), the services of the P.A. would have been covered if provided directly by the M.D.

**Plan:**  This Summary Plan Description (SPD) describing the benefits of your Employee's Health Benefits Plan.

**Preadmission Certification and Postadmission Review:**  The procedures used to determine whether a member requires treatment as a hospital inpatient prior to a member's admission, or within 48 hours or the next business day after the admission in the case of an emergency admission, based upon medically recognized criteria.

**Preferred Care:**  A program whereby providers have agreements with Blue Cross to furnish certain medically necessary services and supplies according to an agreed upon fee schedule for medical and surgical procedures, certain services and supplies to members entitled to benefits under the Preferred Care Program.

**Preferred Home Health Care Agency:**  Any home health care agency inside or outside of Alabama with which Blue Cross has a contract.

**Preferred Home Health Care Fee Schedule:**  The schedule of procedures and the fee amounts listed in the Preferred Home Health Care Fee Schedule or the amount of the Preferred provider's actual charge, whichever is less for Preferred Home Health Care Benefits.

**Preferred Hospice:** Any hospice inside or outside of Alabama with which Blue Cross has a contract.

**Preferred Medical Doctor or Preferred Physician:** A physician who has an agreement with Blue Cross to provide surgical and medical services to members entitled to benefits under the PPO Program or another Preferred Care Program through a contract with Blue Cross.

**Preferred Provider Organization (PPO):** Hospitals, physicians, or other providers who have agreements with any Blue Cross and Blue Shield Plan to provide surgical and medical services to members entitled to plan benefits under the PPO Program.

**Pregnancy:** The condition of and complications arising from a woman having a fertilized ovum, embryo or fetus in her body-usually, but not always, in the uterus-and lasting from the time of conception to the time of childbirth, abortion, miscarriage or other termination.

**Private Duty Nursing:** Nursing care provided in the patient's home by a licensed professional nurse (R.N.) or a licensed practical nurse (L.P.N.) who does not reside in the patient's home and is not related to the patient by blood or marriage.

**Subscriber:** The employee whose application for coverage under the contract is made and accepted by Blue Cross.

**Teleconsultation:** Consultation, evaluation, and management services provided to patients via telecommunication systems without personal face-to-face interaction between the patient and healthcare provider.

**We, Us, Our:** Blue Cross and Blue Shield of Alabama.

**You, Your:** The subscriber or member as shown by context.

# STATEMENT OF ERISA RIGHTS

The following statement is required by federal law and regulation, to the extent applicable to the plan.

As a participant in the plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

## Receive Information about Your Plan and Benefits

Examine, without charge, at the plan administrator's office and at other specified locations, such as worksites and union halls, all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration. Obtain, upon written request to the plan administrator, copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The administrator may make a reasonable charge for the copies. Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summary annual report.

## Continue Group Health Plan Coverage

Continue health care coverage for yourself, spouse or Dependents if there is a loss of coverage under the plan as a result of a qualifying event. You or your Dependents may have to pay for such coverage. Review this summary plan description and the documents governing the plan on the rules governing your COBRA continuation coverage rights.

Reduction or elimination of exclusionary periods of coverage for pre-existing conditions under your group health plan, if you have creditable coverage from another plan. You should be provided a certificate of creditable coverage, free of charge, from your group health plan or health insurance issuer when you lose coverage under the plan, when you become entitled to elect COBRA continuation coverage, when your COBRA continuation coverage ceases, if you request it before losing coverage, or if you request it up to 24 months after losing coverage. Without evidence of creditable coverage, you may be subject to a pre-existing condition exclusion for 9 months (18 months for late enrollees) after your enrollment date in your coverage.

## Prudent Actions by Plan Fiduciaries

In addition to creating rights for plan participants ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a (pension, welfare) benefit or exercising your rights under ERISA.

## Enforce Your Rights

If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules. Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the plan administrator and do not receive them within 30 days, you may file suit in a Federal court (unless your plan has a binding arbitration clause). In such a case, the court may require the plan administrator, which is not Blue Cross, to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court after you have exhausted your administrative remedies under the plan. In addition, if you disagree with the plan administrator's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, you may file suit in Federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

## Assistance with Your Questions

If you have any questions about your plan, you should contact the plan administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the plan administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

## Administrative Information

The following information is provided to complete the requirements for making this a Summary Plan Description as outlined in the Employee Retirement Income Security Act.

1. The Plan's official name is:  Medical Association of the State of Alabama Group Health Care Plan

2. The Plan Sponsor and Plan Administrator is:

   Medical Association of the State of Alabama
   19 South Jackson Street
   Montgomery, Alabama 36104-1900

   Medical Association of the State of Alabama is responsible for discharging all obligations that ERISA and its regulations impose upon Plan Sponsors and Plan Administrators, such as delivering summary plan descriptions, annual reports, and COBRA notices when required by law. To the extent not delegated to Blue Cross, Medical Association of the State of Alabama, as plan sponsor, has the discretionary authority to interpret and construe the terms of the plan.

3. The Plan Number assigned by the Plan Sponsor is:  501

4. The Plan provides hospital and medical benefits as administered under a contract by Blue Cross and Blue Shield of Alabama under group number 80621. Blue Cross has complete discretion to interpret and administer the provisions of the Plan. Its administrative functions include paying claims, determining medical necessity, etc. The address of Blue Cross and Blue Shield of Alabama is 450 Riverchase Parkway East, Birmingham, Alabama 35244-2858. The plan benefits are underwritten.

5. The Agent for legal process is:

   Medical Association of the State of Alabama
   19 South Jackson Street
   Montgomery, Alabama 36104-1900

6. The records of the health plan are kept on the basis of a plan year which begins on January 1st and ends on the following December 31st.

7. Medical Association of the State of Alabama currently intends to continue the Group Health Care Plan as described herein, but reserves the right, in its discretion, to amend, reduce or terminate the plan and coverage at any time for active employees, retirees, former employees, and all dependents.

8. This is an Employer-Employee Shared Cost Plan. The sources of the contributions to this Plan are currently the employer and the employee in relative amounts as determined by the employer from time to time. While the employer may change its level of contribution at any time, the employer must always contribute at least a portion of the employee's premiums. Any information concerning what is to be paid by the employee in the future will be furnished by the employer in writing and will constitute a part of this Plan. Your contribution is determined by the employer based on the plan's experience and other factors.

52

9.   Plan Administrator Contact Information:

Please mail or hand deliver all COBRA notices to your Plan Administrator at the following address:

Attention: Employee Benefits (COBRA)
Medical Association of the State of Alabama
19 South Jackson Street
Montgomery, Alabama 36104-1900